AETNA CASUALTY AND SURETY COMPANY, Appellant,

v.

Derrell Mitchell BAILES, Appellee.

No. 3323.

Court of Civil Appeals of Texas.

Waco.

Dec. 22, 1955.

Rehearing Denied Jan. 19, 1956.

R. T. Bailey, William L. Richards, Dallas, for appellant.

Curtis E. Hill, Dallas, for appellee.

McDONALD, Chief Justice.

This is a common law action to set aside a compromise settlement agreement of a compensation claim (which had been approved by the Industrial Accident Board), alleged to have been procured by fraud. Parties will be referred to as in the Trial Court.

Plaintiff was employed by Southwest Airmotive Company to clean and wash airplane parts in a chemical solution known as Varsol. While performing such duties on 20 February 1953 he complained of an itching and rash on his hands. Thereafter he was examined by Drs. Marshall and Payne, who diagnosed his condition as "Acute Dermatitis from Varsol Solution". He remained away from work being treated by the doctors, but the rash grew worse and spread.

On 2 March. 1953 he was hospitalized for the condition and remained such until 13 March 1953. He continued to receive treatment from the doctors until 28 March 1953, when he was released. During the foregoing period he received compensation payments of $25 per week for four weeks. On 3 April 1953 the adjuster for the defendant Insurance Company negotiated a compromise settlement with plaintiff for $50 in addition to the $100 already paid, which settlement was thereafter approved by the Industrial Accident Board.

Thereafter the plaintiff became much worse from the dermatitis condition and on 15 March 1954 filed suit to set aside the compromise settlement on the ground that it was procured by fraudulent representations made by the defendant's adjuster. Trial was to a jury, which convicted defendant's adjuster of fraud in the procurement of the compromise settlement; and further found that the dermatitis had ceased to exist in an acute stage at the time of the compromise settlement. The Trial Court rendered judgment for plaintiff setting aside the compromise settlement agreement.

Defendant insurance carrier appeals, contending that even though it procured the compromise settlement by fraud, the same cannot be set aside since plaintiff received all of the compensation that he was entitled to receive. Defendant says that dermatitis is compensable for the acute stage only; that the jury found that at the time of the settlement plaintiff's dermatitis had ceased to exist in the acute stage; that plaintiff's period of disability was for 6 weeks; that plaintiff's rate of compensation was $25 per week; that the $150 plaintiff received was all that he was entitled to receive; and that plaintiff has not shown himself entitled to more compensation than the $150 paid to him.

■ Our Supreme Court has held that in a suit to set aside a Workmen's Compensation release and compromise settlement which has been approved by the Industrial Accident Board, that the plaintiff must show. that he would have been entitled to more compensation than the amount received, but for the settlement sought to be set aside. If the plaintiff should show only that he would be entitled to receive as compensation on a trial of his cause for compensation a smaller amount, or the same amount, as that already paid him, of course, he could not have the release cancelled. To so cancel the release would be a vain and useless thing which the courts will not do. Brannon v. Pacific Employers Ins. Co., 148 Tex. 289, 224 S.W. 2d 466.

■ The issue therefore to be determined in this case is whether or not the record supports findings that the plaintiff is entitled to receive more than the $150 paid to him, in compensation for his injury or disability, if the compromise settlement for such amount be set aside.

The jury in this case found that plaintiff sustained an accidental personal injury to his arms, legs, and face, in the course of his employment on 20 February 1953; that defendant's adjuster *procured and induced* the settlement for $150 with plaintiff on 3 April 1953 by telling plaintiff that if his dermatitis recurred his claim could be reopened; that but for such statement plaintiff would not have executed the compromise settlement; that defendant's adjuster had no intention of reopening the claim in the event of a recurrence of plaintiff's dermatitis; and that plaintiff knew that the dermatitis was not completely well, but that it had ceased to exist in an acute stage. The jury then further found in Special Issue No. 20 that:

> "*As a natural result of the injury received by plaintiff on 20 February 1953, in the course of his employment with Southwest Airmotive the dermatitis skin condition has recurred since he made the compromise settlement*"

and in Special Issue No. 21 that:

> "*As a result of the recurrence of the dermatitis skin condition he has suffered disability to work.*"

We think that the findings made by the jury in the foregoing Special Issues Nos. 20 and 21 establish conclusively that plaintiff is entitled to more than $150. The evidence amply supports such findings of the jury. It reflects that plaintiff was originally disabled from 23 February 1953 until 3 April 1953—a period of approximately 6 weeks; that his rate of compensation was $25 per week; that his total compensation received was $150. Surely if the condition recurred, and he suffered any *further* disability to work he would be entitled to *more* and additional compensation to the $150 paid to him, which amount at $25 per week would only take care of the original 6 weeks of compensable disability. We think the plaintiff met the burden imposed on him to show himself entitled to more compensation benefits than received under the settlement agreement, in the jury's answers to Special Issues 20 and 21 supra—and that there is abundant evidence in the record to support such findings. Further, since the judgment is favorable to plaintiff, it must be presumed that the Trial Court made findings of fact that plaintiff was entitled to more compensation than the $150 settled for, on account of the recurrence of his dermatitis skin condition. See Rule 279, Texas Rules of Civil Procedure.

Defendant further contends that since the jury found the *"acute"* stage of the dermatitis condition had ceased to exist on 3 April 1953, that this formed a cutoff date of its liability for compensation springing out of this particular injury. This might be true except for the jury's further finding that thereafter the dermatitis condition *recurred,* and caused plaintiff to be *further* disabled to work as a result thereof. Common knowledge is to the effect that injuries and sickness *may* get better for a time and then get worse for a time. Here the evidence reflects and the jury found that the doctor said he could not tell whether plaintiff's dermatitis condition would recur in the future—that plaintiff understood that it might recur in the future, but signed the compromise relying on defendant's adjuster's assurance and representation that if the condition did recur in the future his claim could be reopened.

Section 27 of Article 8306, R.C.S., Vernon's Ann.Civ.St. art. 8306, § 27, sets out that:

"In any case wherein the employment causes an acute disease, condition or allergy which can be arrested by a change of employment or by medical treatment under which the employee will suffer no objective symptoms of such disease, condition or allergy, the employee shall be entitled to compensation only for the period during which said disease, condition or allergy *persists* in an acute state."

The foregoing section does not limit compensation to an original or initial acute stage. It does not say that if such condition gets a little better to where it is not in an acute state—but then thereafter lapses back into an acute state—stemming from the original cause, that the employee is limited in his compensation to the duration of the first, original, or initial period of the acute state.

The decisions of this state, with no exception, announce the rule that the Workmen's Compensation Act is remedial in nature and that the courts will give the Act the most liberal construction it will reasonably bear in favor of the injured employees. See 45 Tex.Jur. 363. The reasons usually given for this very broad and liberal construction is in order "to effectuate the beneficent purposes for which it was enacted"; Blain v. Service Mutual Ins. Co., Tex.Civ.App., 159 S.W.2d 538, 540; Employers Mutual Liability Ins. Co. of Wis. v. Evins, Tex.Civ.App., 211 S.W. 2d 359; and "to accomplish its purposes and to promote justice, and to protect the employee"; Rogers v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 224 S.W.2d 723, 725.

Certainly to deny an injured employee the right to set aside a compromise settlement which he was induced to enter into by the fraud of the insurance carrier—a

fraud which goes to the very heart of his present condition, viz., misrepresentations to the effect that if his dermatitis skin condition recurred *plaintiff's then claim could be reopened*—, would not be in accomplishment of the purpose of the Act,—in promotion of justice, or in protection of the employee.

We have carefully examined all of defendant's points and overrule them. It follows that the judgment of the Trial Court is affirmed.