## HARTFORD ACCIDENT & INDEMNITY CO. v. JONES.
### No. 7804.

Circuit Court of Appeals, Fifth Circuit.

Dec. 20, 1935.

Rehearing Denied Jan. 23, 1936.

Joseph J. Eckford and Paul T. McMahon, both of Dallas, Tex., for appellant.

Henry Mack, Theodore Mack, Sam A. Woodward, and W. P. McLean, Jr., all of Fort Worth, Tex., for appellee.

Before SIBLEY and HUTCHESON, Circuit Judges, and STRUM, District Judge.

SIBLEY, Circuit Judge.

Under usual proceedings, James M. Jones recovered compensation as for a temporary disability for an injury alleged to have been received while employed in Texas as an automobile mechanic by Lone Star Gasoline Company, Hartford Accident & Indemnity Company being the insurer. On the ground that Jones was shown to be suffering from an occupational disease rather than from an injury within the Texas Compensation Act (Vernon's Ann.Civ.St.Tex. art. 8306 et seq.), a peremptory instruction against recovery was asked, and the refusal to give it is the sole assigned error.

Jones testified that he was forty years old, had been an automobile mechanic for twenty-one years and had worked for Lone Star Gasoline Company since August 21, 1933, having the general duty to repair its automobiles and trucks. An unusual thing happened about October 25th in that,

after overhauling a truck for about three days, which work had required the use of quite a lot of red gasoline in washing the parts both of the motor, transmission, rear end, and brakes, necessitating using his hands in the gasoline, a breaking out appeared on and between his fingers. This was an unusual length of time to work on a job. He worked at it eight hours per day and had his hands in this gasoline about half the time. The blisters came on his hands the second or third day afterwards. Big cracks also came on his hands and a skin cancer during February, 1934, developed on one of them. The doctor to whom he went told him the red gasoline had poisoned his hands. He had to quit work in March, and when he tries to work now his hands break out and swell up. The cancer remains unhealed. From the first of his employment he at times had his hands in this red gasoline, which was the only kind furnished him, but not every day and not for so long a time as on the occasion in question. His hands had not before been affected by it, nor had those of other employees so using it. He gave some of this gasoline to his doctor to experiment with. The doctor testified that Jones had acute dermatitis, developing into the cancer, and causing swelling and cracking and scaling of the skin of his hands and fingers, that the dermatitis was evidently produced by something that had irritated or poisoned his skin. Sometimes dermatitis is produced by something taken internally, sometimes by external things. In this case he concluded it more likely that it was something he was coming in contact with. He experimented on him, using what he called "a very weak solution of gasoline" and going on to "a reasonably strong solution" which did not affect the doctor's skin but gave a distinct inflammatory reaction on the skin of Jones lasting for several months. He concluded "the cause of the injury was gasoline poisoning. * * * I don't know whether his condition is due to a continuous exposure or to a single exposure to gasoline. A continuous use of gasoline might produce it. One severe exposure might cause it."

It would be unprofitable to attempt to review or reconcile the many cases decided by the several Courts of Civil Appeals bearing on the question made. In Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556, the Supreme Court of Texas held that the industrial injuries which are compensable under the Texas Act (Acts 33d Leg. (1913) c. 179) are accidental injuries as distinguished from intentional ones, since the common law remedy for the latter could not be taken away because of a provision of the Texas Constitution (article 1, § 13). The Compensation Act itself as amended defines injury as "damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." Vernon's Ann.Civ.St.Tex. art. 8309, § 1. Pneumonia resulting from several wettings by rain was held not to involve an injury as thus defined, in Texas Employers' Insurance Association v. Jackson (Tex.Com.App.) 265 S.W. 1027. Tuberculosis gradually contracted from exposure to gases and fumes commonly incident to the work was held an occupational disease and not an injury and therefore not covered by the act in Aetna Life Ins. Co. v. Graham (Tex.Com.App.) 284 S.W. 931. In Barron v. Texas Employers' Ins. Association (Tex.Com.App.) 36 S.W.(2d) 464, 465, the distinction between occupational disease and accidental injury under the Act is thus drawn: "A disease acquired in the usual and ordinary course of an employment, which from common experience is recognized to be incidental thereto, is an occupational disease and not within the contemplation of the Workmen's Compensation Act, but an injury resulting from accident is something which occurs unexpectedly and not in the natural course of events. * * * A distinguishing characteristic of an accidental injury is that it can always be traced to a definite time, place, and cause. * * * An occupational disease must be restricted to one that is the usual and ordinary result incident to the pursuit of an occupation and must in the nature of things be the result of a slow and gradual development." On the point of definite time and place and cause Schneider's Compensation Law, § 223, was approvingly quoted: "The disease must come from an injury, although the injury may not be a single, definite act, but may extend over a period of time." Barron had tuberculosis which followed inhalation during two days of unusual quantities of poisonous and irritating gases while at a work which normally exposed him to some inhalation thereof. He was held to have a compensable injury and not an occupational disease. So in Maryland Casualty Co.

v. Rogers (Tex.Civ.App.) 86 S.W.(2d) 867, an employee who normally inhaled some dust in his occupation and who on one occasion for several hours was exposed to unusual quantities, causing coughing and spitting and followed by pneumonia was held to have a compensable injury. Our own case of Salinas v. New Amsterdam Casualty Co., 67 F.(2d) 829, followed the Barron Case in distinguishing compensable injury from occupational disease, but held that Salinas was not shown to have been exposed on the occasion claimed to unusual quantities of cement dust or, that the abscess on the brain which killed him had any connection with such inhalation or with his occupation.

■ From the evidence in the present case, it is not clear whether there was anything unusual about the red gasoline given Jones to work with. It is common knowledge that pure gasoline is nearly colorless, but that in recent years that sold at the filling stations is advertised as containing lead and not to be permitted to come in contact with the skin. The medical witness speaks of experimenting with a weak and a strong "solution of gasoline," he having been supplied with some of that used by claimant; but since gasoline is a fluid and a solvent, it is not naturally spoken of as itself soluble, and his meaning appears to be that he mixed this red gasoline including whatever it carried in solution with some other neutral liquid so that the mixture would be weak or strong. His calling claimant's condition an acute dermatitis means in common language only that he had a sudden inflammation of the skin. His inability to say as a medical expert whether it resulted from one prolonged exposure or frequent repeated exposures does not prevent the jury from making a finding on that point. The evidence is that neither the claimant nor the other workers had before October 25, 1933, been so affected by the normal use of gasoline in their work. There is thus no real foundation for a belief that this acute skin condition was an occupational disease, that

is, a usual and ordinary result of Jones' occupation and recognized in common experience to be incidental to it. While it did not follow the claimed unusual use of gasoline instantly, it did follow promptly and without any other known cause. The conclusion that this unusual occurrence, though as in Barron's Case extending over more than one day and not exhibiting instantaneous effects, was an injury rather than a mere disease is not unwarranted. The tissues of his body were visibly damaged, and, it may be concluded, by a direct irritation of them not unlike the effect of dust or gases on the more sensitive tissues of the lungs. If Jones' hands had come out of this gasoline instantly white or red no one would hesitate to say that there was an injury. That it took two or three days to produce the damage and that the consequences were not clearly visible for two days more would not, in our opinion, alter the nature of the occurrence. The fact that Jones, at least since his injury, seems to be peculiarly sensitive to the effects of the red gasoline does not defeat him. An injury may often accrue to one man who is in a state of weakness that would not have resulted the same way in a hardier man. If there be a real injury, the background of his peculiarities will not defeat compensation for it. For illustration, though the direct rays of a summer sun may not affect a skin inured to them, they will, although not instantaneously, on long exposure seriously burn one of tender skin, and the burn, if sufficiently extensive, may be even dangerous. We conceive that such a burn due to unusual exposure would be an injury. Although the present is not a strong case for the claimant, we think there was evidence from which it might be inferred that the inflammation of Jones' hands was due to unusual exposure to this red gasoline at a sufficiently certain time and place and in the course of his employment, and that it was not the manifestation of a disease usual in and recognized as incident to his occupation.

Judgment affirmed.