## MARYLAND CASUALTY CO. v. BROAD-WAY et al.

### No. 9249.

Circuit Court of Appeals, Fifth Circuit.

March 15, 1940.

Rehearing Denied April 19, 1940.

358

Larry W. Morris, of Houston, Tex., for appellant.

Ewing Werlein and Ernest E. Dowdell, both of Houston, Tex., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

On Rehearing: Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The jury found facts on which the court adjudged compensation to appellees, the widow and children of Kenneth Broadway, under the Texas Workmen's Compensation Law, (Revised Statutes, Art. 8306 et seq., Vernon's Ann.Civ.St.Tex. art. 8306 et seq.), for his death by pneumonia caused by exposure while at work to fumes of sulphur dioxide. The appellant contends here that the verdict should have been instructed against the claimants, that certain issues of fact should on its request have been submitted to the jury, and that an improper argument of claimants' counsel before the jury should cause a new trial.

In a plant manufacturing sulphuric acid sulphur was burned to produce sulphur dioxide and this gas was conducted through large sheet metal pipes under a pressure of about three pounds to the square inch to processing tanks. These pipes by corrosion came to have slits and small holes in them through which the gas was escaping. Broadway as an electric welder, assisted by others, was covering them with new metal sheets about six feet long, bent around the old pipes and welded together so as to cover each old pipe with a new one. He took a vacation trip of two weeks ending August 15, 1937, and returned to work with a severe cold which continued several days, he feeling sick but persisting in working. On August 24 and 25, while working on a certain long, horizontal pipe he was coughing a great deal, and on the latter day quit work and went home ill, and died of double lobar pneumonia on August 29th. The claimants contend and the jury found that on those days Broadway inhaled large quantities of sulphur dioxide gas which irritated and broke down the tissues of his lungs, which resulted naturally in the pneumonia which killed him. The appellant contends that he died of disease, perhaps an occupational disease, but not of any accidental injury within the Compensation Law.

■ There is no dispute that the immediate cause of death was double pneumonia. The attending physician said in the death certificate he made that the secondary cause was "Exposure." He testifies that in his opinion what caused the pneumonia was exposure to the gas fumes, which are highly irritating and corrosive to delicate tissues such as those in the lungs, producing a prompt physical lesion of them, by reason of which the pneumonia germs which are generally present may enter and set up the pneumonic infection. The claimants' medical testimony further is that the fact that there was simultaneous infection of both lungs is evidence that it came from an external cause acting on both lungs, that this is common in pneumonia resulting from inhalation of ether, and not usual in ordinary pneumonia arising from a general weakening of resistance. It is also testified that a cold does not naturally cause pneumonia, because the cold is confined to the membranes of the nose and throat, while pneumonia attacks only the lungs. On this testimony the jury could find that this case of double pneumonia was an infection naturally resulting from a physical injury to both lungs caused by the inhalation of sulphur dioxide gas. It is proven that sulphur dioxide gas, in the presence of the moisture in the lungs, becomes sulphuric acid, the power of which to destroy protecting skin or membrane is well known. The infection of such a wound in the lungs by pneumonia germs is not unlike the infection of an external wound by other noxious germs. Both are covered by the statutory definition of a compensable injury as "damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." R.S. Art. 8309, § 1.

■ The Texas statute does not mention accident, but the courts have said that the injury must be attributable to some definite occurrence; one must be able to assign it a time and place and cause. If it arises gradually, over a long period, with no particular happening to attribute it to, it is only a disease, though caused in a general way by the work. If it is a disease that commonly is caused by such work, it is an occupational disease; which is not compensable. But if the bodily injury is referable to a definite occurrence or series of occurrences in the work, to which a time and place can be assigned, it may be compensable though it does not result instantly.

Hartford Accident & Indemnity Co. v. Jones, 5 Cir., 80 F.2d 680. The fact that the injury is internal and not visible does not prevent its being compensable. Brodtman v. Zurich Genl. Acc. & Liability Ins. Co., 5 Cir., 90 F.2d 1; Fidelity & Casualty Co. v. Neas, 5 Cir., 93 F.2d 137. The present case is not one of occupational disease, because the evidence is that through a period of many years no other employee has been known to have pneumonia from inhaling the gas, though some of it is usually encountered about the plant. Associated Indemnity Corp. v. Baker, Tex.Civ.App., 76 S.W.2d 153. If Broadway's double pneumonia was really caused by the gas, it must have been because of unusual exposure or unusual concentration of it. Of this there is no very definite evidence. Other workmen did not notice any such thing. But the welder had to keep his face closer to the pipe than they. They could wear gas masks, but he could not, because he had to wear instead a helmet or shield to protect his eyes, which did not exclude but tended to accumulate the gas and had to be removed from time to time for fresh air. As the new pipe was welded together over the old pipe the gas escaping from the holes in the old one would be confined in the new one, escaping only at the openings where the welder was at work; so he might get an accumulation of it. Broadway on his last day at work was heard to exclaim: "This gas is hell." Putting this all together, the jury might conclude that Broadway did encounter an unusual and harmful amount of gas which then and there physically injured the tissues of his lungs. The witness who testified to Broadway's complaint of the gas was positive it was made on the last day of work, though with less positiveness he said they were working on a pipe which was proven by other evidence to have been fixed several weeks earlier. He was testifying a year and a half after the event, and the jury were not bound to wholly reject his testimony, but might believe the complaint was made at the time he stated, he being honestly mistaken as to the precise place. It was not error to submit the case to the jury. Lake County v. Massachusetts Bonding & Ins. Co., 5 Cir., 75 F.2d 6; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720.

■ The judge had the jury answer specific questions under Rule of Civil Procedure 49(a), 28 U.S.C.A. following section 723c. Several questions requested by ap-

pellant were not submitted. Some of these were merely collateral, as those which asked on what particular pipe Broadway was working on August 24, and what pipe he was working on when he complained, and whether the complaint was before or after Broadway's vacation. The witness was properly cross-examined about those matters, and no doubt they were argued to and decided by the jury in weighing his testimony, but they were no necessary part of the verdict. Two other requested questions of more importance were these: "Did the injury, if any, to some extent reduce the power of resistance and in that manner contribute in some degree to his death?" "Was Broadway's death due directly to an independent intervening agency, such as pneumonia?" A fatal disease which does not naturally result from a bodily injury does not give rise to compensation for death. Texas Employers' Ins. Co. v. Burnett, 129 Tex. 407, 105 S.W.2d 200. But the point was covered by the questions put to and answered by the jury:

"Q. If so, did the lobar pneumonia of which Kenneth Broadway died naturally result from such accidental injury? A. Yes.

"Q. If so, was the lobar pneumonia caused solely by such accidental injury? A. Yes."

Rule 49(a) does not require the submission of all questions which the parties may request, nor of requested questions which are substantially covered by others, but only such as are raised by the pleadings and evidence and are important to the judgment to be rendered.

Claimants' counsel in argument to the jury said: "Kenneth Broadway died and died gasping for air, and his widow and two children are standing here before you gasping for air, in that they are asking for just compensation." Appellant's counsel objected to the remark as tending to inflame the mind of the jury and prejudice them. The court sustained the objection and directed the jury not to consider the remark, saying that it was an improper argument and ought not to have been made. No mistrial was moved, but the matter was treated as ended. The judge did all he was asked to do. He evidently thought nothing more was necessary. It is not an extreme case in which a mistrial ought to have been declared on his own motion, but rather the common case of counsel carried away by the zeal of argument and overstepping the line of just and proper argument by emphasizing facts that are apparent but ought not to affect the decision of the case. A mistrial was not demanded and a new trial ought not to be awarded.

Affirmed.