**SAFETY CASUALTY CO. v. O'PRY.**

No. 4288.

Court of Civil Appeals of Texas.

March 15, 1945.

Rehearing Denied April 18, 1945.

Lipscomb & Lipscomb, of Beaumont, for appellant.

Adams, Hart & Daughtry, of Beaumont, for appellee.

MURRAY, Justice.

Joseph O'Pry, while employed by the Magnolia Petroleum Company about November 1, 1943, was engaged in setting a blind in a gas pipe at that company's refinery. In the course of that operation some bolts were unscrewed and while the two joints of pipe were momentarily open some gas, acid and fumes of gas came from the pipe. He breathed some of these fumes and immediately was severely affected by it. He had trouble breathing, began to cough and burn and could not see, went into the outside air and attempted to vomit. He finished his hours of shift on that day and continued to work for the company until he quit work New Year's night of 1944. He had previously worked for a road contractor and for a ship yard in Beaumont. In January, 1944, a laboratory-sputum examination showed no tubercular germs and showed the presence of other ordinary pus forming germs. By September 5, 1944, the date of the trial, a sputum examination of O'Pry showed the presence of many tubercular germs.

O'Pry brought suit against Safety Casualty Company, the compensation carrier of his employer, alleging that he had suffered an accidental injury and disability thereby, and upon trial to a jury he was awarded compensation for a period of 208 weeks. The appellant has duly perfected its appeal from judgment making such award.

In its first, second and third points, appellant attacks the sufficiency of the evidence to support the findings of the jury that the appellee had sustained an accidental injury and that the personal injury sustained resulted in total incapacity to work and earn money. The appellant maintains that since the evidence shows that the appellee lived with his wife and six children in one room, that a baby was born to his wife in December, 1943, that the husband worked shift work and sometimes slept day time and sometimes at night, his home surroundings show that he was the victim of a situation ideal for the development of tuberculosis; that the damage and infection of his lungs was not caused by a single incident which could be deemed an industrial accident but that his development of tuberculosis was a slow process, covering a number of weeks and months, caused by the slow and gradual inhalation of noxious gases so as to make his disability the result of an occupational disease rather than the result of industrial accident.

The following testimony was introduced for the appellee by the testimony of a physician:

"Q. Just what happened to this fellow between the examination in February and the examination here on the 5th of September? A. Every body in this country, by the time they are aged fifteen, have tuberculosis. Of course, they don't all come down with what we call a destructive tuberculosis, but they have latent tubercular germs in their lungs at all times, and anything that will reduce their resistance, either loss of sleep or influenza or irritant gases or what not, can bring about the lighting up of these tubercular germs in the lungs."

The following hypothetical question was propounded to the Doctor and the following answer was given:

"Q. Assuming this man (O'Pry) to have gone about his work, been a farmer, got a job out at the Magnolia in June of last year, went about his work until early part of November and while putting a blind in a pipe, apparently gas, acids or fumes from the work being done escaped, breathing them, and at the same time was very near what he described as the acid plant, and at the time they were discharging fumes from the acid plant, he inhaled those, at that time he immediately felt a burning sensation in his eyes, burning in his lungs, began coughing, found it necessary to leave his work temporarily and go out in the fresh air to relieve his condition. Assuming that to be true, that it really happened, and knowing his condition as it is now, from a medical standpoint, from your more than thirty years of practice and the teachings of your profession, do you see any connection between the inhalation of the gas or the acid or of the acid fumes and his present condition? A. Yes. This man could have had tuberculosis when this accident happened to him, but if he had any condition or had an irritation produced by the gas, it is possible that that accident brought this condition about.

"Q. Assuming what I say to be true, that he inhaled this gas and acid fumes like he said he did, set up this irritated condition, caused him to cough so severely he left his work temporarily and returned, and from then on, through the months of November and December he coughed worse and worse and the pain in his chest grew worse until the last of December, the first of January, he had to give it up, give up his job, and quit work. Now is that the course, from a medical standpoint, you would expect to follow from a latent tubercular condition being aroused by inhalation of an irritant? A. It could be.

"Q. Was that the history you would expect or would it be different? A. That is what you would expect.

"Q. Does that follow the logical pattern of your experience or would it be different? A. That is what you would expect.

"Q. Does that follow the logical pattern of your experience as a physician in gas causing the arousing of this latent condition and causing him to be in the condition he is now in? A. Yes.

"Q. That is the history of the case as far as it goes? A. That is right.

"Based upon X-ray picture and report made by Dr. Ledbetter I could not tell whether it was an abscess or not, the inflammation was so extensive—the inflammation of his lung was very extensive. Ledbetter couldn't tell what kind of cavity it was. He was inclined to believe it was an abscess, and the laboratory report showed that probably it was an abscess. It could have resulted from any infection. Of course, irritant gases would irritate the lungs in such a way it makes it possible for an infection to come on, either influenza or any other kind of infection."

■ From the foregoing testimony, and that of O'Pry himself, we believe the jury was warranted in finding that the appellee received an accidental personal injury in the inhalation of the gas and fumes, and that such inhalation of the gas and fumes was the producing cause of his tubercular condition and consequent disability. Appellant's first, second and third points are overruled.

■ By its fourth and fifth points, appellant complains of the definition in the court's charge of the term "accident" and of the refusal of the court to include in such definition a special instruction in regard to occupational disease. In special issue No. 5 of the court's charge to the jury, a finding was asked as to whether the personal injury sustained by the appellee was an accident, and the term accident was defined as "an unforeseen, undesigned and unexpected occurrence of a calamitous nature." Special issue No. 19 of the court's charge asked a finding as to whether the appellee's incapacity was the result of an occupational disease, and defined the term "occupational disease" as "a disease contracted by a slow and gradual process in the ordinary course of employment and because thereof, and reasonably to be anticipated as a result of the work and which from the common experience of mankind is known to be incidental thereto." Appellant objected to the definition of "accident" on the ground that it was too restrictive in that it failed to inform the jury that a disease acquired in the usual and ordinary course of employment, which from common experience is recognized as being incidental thereto, is an occupational disease and not an accident. We overrule these contentions of appellant. We believe the definitions were correct as

given in the court's charge and although the definition of occupational disease is not given in connection with the definition of accident, the two issues were submitted fully and separately, in which no error is shown.

By its sixth point, appellant complains of the action of the court in submitting to the jury special issues calling for findings as to whether the inhalation of gases was a producing cause of appellee's disability; it says the evidence was insufficient to support findings thereon. From our discussion of appellant's first, second and third points, it will be seen that we do not agree with this contention and it is overruled.

In its seventh point, appellant complains of the failure of the trial court to submit the special issue requested by appellant asking for a finding as to whether the appellee's condition resulted from successive and repeated irritations of his lungs and respiratory organs over a period of time from June 1, 1943 to December 30, 1943. Appellant contends that ·this requested issue should have been submitted in order that its defensive theory might be fully submitted to the jury, that is, its theory that the appellee's tubercular condition was the result of an occupational disease. We are unable to agree with this contention. The question of whether O'Pry's tuberculosis was the result of successive and repeated irritations of his lungs or was the result of inhalation of an excessive amount of gas on a certain occasion was adequately submitted to the jury in the charge of the court. Under the authority of the holding in Barron v. Texas Employers' Insurance Ass'n, Tex.Com.App., 36 S.W.2d 464, we believe that even an affirmative answer by the jury to the special issue requested and refused could not have affected the ultimate finding by the jury that O'Pry's condition was the result of an accident at one certain time.

By its eighth point, the appellant complains of the trial court's refusal to grant its special requested issue "D", which requested a finding as to whether appellee's tuberculosis developed gradually in the ordinary course of his employment as the result of successive and repeated exposures to gas or acid fumes. By its special issue No. 19, the court submitted to the jury the question whether appellee's incapacity was the result of an occupational disease. By its special issue No. 25, the court submitted to the jury the issue whether the sole producing cause of appellee's disability was disease of the lungs and respiratory organs resulting from causes other than injury, the jury in its verdict answered, "It is not produced solely by other causes." This issue had been requested by the appellant. We believe that the special issue No. 25 as given by the court was much broader than the issue which was refused by the court, and that this defensive theory was submitted to the jury in special issue Nos. 25 and 19.

The judgment is affirmed.