**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Ardley CROSS, Jr., Appellee.**

No. 13915.

Court of Civil Appeals of Texas.

San Antonio.

May 9, 1962.

Rehearing Denied June 13, 1962.

Groce & Hebdon, Charles L. Smith, San Antonio, for appellant.

Rudy Rice, Frank R. Southers, San Antonio, for appellee.

POPE, Justice.

Ardley Cross, Jr., obtained a judgment on a verdict for total and permanent incapacity in a compensation case. Texas Employers' Insurance Association attacks the findings (1) that Cross sustained an accidental injury, and (2) that he was totally and permanently disabled. The complaint is that those findings have no support in the evidence, and alternatively that they are against the great weight of the evidence. We affirm the judgment.

Contact dermatitis was the injury. The Association reasons that the proof shows that it was an occupational disease because it was "acquired in the usual and ordinary course of an employment, which from common experience is recognized to be incidental thereto." Barron v. Texas Employers' Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464. Cross argues that there was evidence of an accidental injury which the Barron case defines as "something which occurs unexpectedly and not in the natural course of events. * * * A distinguishing characteristic of an accidental injury is that it can always be traced to a definite time, place, and cause." The Association relies upon certain evidence, including opinion evidence, that indicates the injury was an occupational disease. This evidence is met by direct and inferential evidence to the contrary. The jury had the right to make its own determination about the weight and credibility of the evidence.

Cross began working about July 1, 1958, for a company which was constructing the foundations for expressway viaducts in

San Antonio. This required the drilling of holes which were forty-two inches in diameter, into which concrete was poured for the erection of concrete shafts. As the concrete filled the hole, a crane would lift a steel casing inside the hole, and sometimes an excess of concrete would flow above the point at which a cap or collar was required to be set at the top of the shaft. It was Cross' duty to set this cap at the proper level. It was also his duty to dig out all excess concrete before it hardened. The claimed accident occurred on August 15, 1958, about forty days after he began this work with concrete. During that time about two foundations were poured each day, and on two former occasions he was required to dig out the excess concrete.

There was evidence that on August 15, when the casing was pulled, one or two yards of excess concrete flowed into and around the shaft. Cross, working with hip boots, was scooping out this concrete with his hands, which was necessary in order to get the concrete from around the steel reinforcements. Cross stated, "That day I fell in the hole there I got in above my boots. * * * I slipped and fell in the hole. With all that wet concrete around the top, I slipped and fell in the hole." He had earlier stated, "When you get down in this soft cement you can't stand on it, you just go down in it. Well, that is what I did, and I had it all over me. * * * Well, anyhow, whenever I had taken and finished this up right here as far deep as I could with the shovel, I don't know exactly how deep it was to be sure about it, but I got off in this hole somehow, I don't know how, but anyhow, I got plumb off and cement all over me. I was in water and cement trying to get this out of here before it got hard." On cross-examination, Cross explained that in doing his work, he would ordinarily get some cement on him, but "you don't take a bath in it like I did that day." He stated that the cement went down in his boots. There was other evidence to the same effect.

Prior to this incident, Cross had never had any skin trouble. After he was saturated with concrete, eruptions occurred on his hands and legs above his boot tops. Swelling, itching, inflammation and blisters then spread to his arms, feet, back, chest, and finally covered his entire body.

 Because contact dermatitis is listed in Section 20, Article 8306, Vernon's Tex.Civ.Stats., as one of the diseases which is compensable as an occupational disease, does not mean that it could never be the result of an accidental injury. The decisions even prior to the amendment of the occupational disease statute in 1955, permitted recovery, as accidents, for some of the things which are listed in that statute, provided they met the test stated in Barron v. Texas Employers' Ins. Ass'n, supra. See Aetna Casualty & Surety Co. v. Bailes, Tex.Civ.App., 285 S.W.2d 886; Texas Employers Ins. Ass'n v. Freeman, Tex.Civ.App., 266 S.W.2d 177; Texas Employers Ins. Ass'n v. Wade, Tex.Civ.App., 197 S.W.2d 203; Safety Casualty Co. v. O'Pry, Tex.Civ.App., 187 S.W.2d 578; Federal Underwriters Exchange v. Price, Tex.Civ.App., 145 S.W.2d 951; Maryland Casualty Co. v. Rogers, Tex.Civ.App., 86 S.W.2d 867; Hartford Accident & Indemnity Co. v. Jones, 5 Cir., 80 F.2d 680. There was evidence of an accidental injury, and it is not against the great weight of the evidence.

 The findings of total and permanent incapacity also have support in the evidence. By November 19, 1958, Cross' condition had become so severe that he stopped work, though he had been transferred to work which would avoid his contact with concrete. A month and a half later he took a job in Freer, Texas, driving heavy equipment, and again avoided contact with concrete. After two weeks he began driving a tractor. He then drove a water truck. His skin condition continued so that he again had to quit work. After four months of unemployment, he took a job driving earth-moving equipment.

He worked a few months, was unemployed six months, began work driving earth-moving equipment for Crea Brothers, worked five weeks, and was again out of work for four months. He then worked as a dragline operator in the San Antonio River. His condition persisted. When that job terminated, he was unemployed for a month and a half and then operated a motor crane from November, 1960 to January, 1961. The proof, therefore, is that Cross was able to obtain and retain employment and perform his usual tasks for six months out of the first year following his accident, and for fifteen weeks during the next year, and that he continues to suffer from the skin irritations. He can not perform the only kind of work he knows, because his skin is sensitive to those things which are incident to that work. The record contains evidence of total· and permanent incapacity, and it is not against the great weight of the evidence. Trinity Universal Ins. Co. v. Scott, Tex.Civ.App., 342 S.W.2d 348.

The judgment is affirmed.