The TRAVELERS INSURANCE COMPANY, Appellant,

v.

Novelle R. FAGAN et vir, Appellees.

No. 7474.

Court of Civil Appeals of Texas.

Texarkana.

March 12, 1963.

Rehearing Denied April 16, 1963.

Moore & Lipscomb, Paris, for appellant.

Leslie Echols, C. V. Flanary, Jr., Paris, for appellees.

CHADICK, Chief Justice.

This is a Workmen's Compensation Law case. Consonant with jury answers to special issues a judgment was entered in the trial court awarding an injured worker the sum of $4,048.32 for 78 weeks of temporary total incapacity to labor, and to reimburse medical and hospital expense.

The injured employee was a married woman. Her husband did not join in the prosecution of her claim before the Industrial Accident Board, but became a party plaintiff on the appeal from the Board's award. The insurer, the appellant here, excepted to the court action and moved to abate the suit. The insurer's first point of error is directed to the action of the trial court in overruling such exception and plea.

The precise question has not had the attention of a Texas appellate court. A similar but slightly more elaborate question, in that the husband was not a party to proceedings either before the Industrial Accident Board, or in the trial court, was before the United States District Court for the Northern District of Texas in Lynch et al. v. American Motorists Ins. Co., 101 F.Supp. 946. Very similar also, was a question answered in Texas Unemployment Compensation Commission v. Frank, Tex. Civ.App., 229 S.W.2d 399. In the latter case a married woman's claim was processed by the Texas Unemployment Compensation Commission without the woman's husband being joined in the proceeding. On her appeal to the county court a plea in abatement was filed and thereupon the husband joined in the lawsuit. In each of these cases it was held that the court had jurisdiction. The reported opinions contain an extensive discussion of the rationale of the decisions. The reasoning will not be repeated; it is sufficient to say that insofar as this particular case and its factual circumstances are concerned, the Workmen's Compensation Law, Art. 8307, Sec. 5, Vernon's Tex.Civ.St., authorizes the employee and her husband to prosecute this suit. The mentioned Article allows an "interested party" not satisfied by a final ruling of the Industrial Accident Board to bring suit to set aside such ruling. The first point of error is overruled.

After carefully summarizing the evidence, the insurer argues under its next four points that (1) compensable injury was not shown by the evidence, (2) the undisputed physical facts show the workman was not injured by cold air blowing on the top and side of her head, and (3) the jury's findings are contrary to the great weight and preponderance of evidence.

■ *Compensability.* Presently, for the purpose of reviewing the elements of a compensable injury, it will be assumed that an injury followed by incapacity to labor was proven by Mrs. Fagan. Under another heading the question of the occurrence of an injury will be noticed. Her injury is compensable under the Workmen's Compensation Law if it was inflicted while she was engaged in the performance of her duties as an employee, and a cause of her injury was a condition (exposure to a hazard) associated with (originating in) her employer's work. Texas Employers' Ins. Ass'n. v. Mincey, Tex.Civ.App., 255 S.W.2d 262, W/R.; American Motorists Ins. Co. v. Steel, Tex.Civ.App., 229 S.W.2d 386, W/R.; Cassell v. United States Fidelity & Guaranty Company, 115 Tex. 371, 283 S.W. 127, 46 A.L.R. 1137; In re McNicol, 215 Mass. 497, 102 N.E. 697, L.R.A.1916A, 306; Arts. 8306, Sec. 20, 8309 V.T.C.S., see also Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581.

The following is a brief summary of evidence in its most favorable aspect respecting compensability. Mrs. Fagan was employed by Hollywood-Vassarette, Munsingwear Incorporated as a power sewing machine operator and placed at her employer's worktable in an air-conditioned room. Air, refrigerated to a temperature of 60 degrees, was emitted at a rate of 900 cubic feet per minute from a vent located ten feet above floor level and approximately twelve feet distant from Mrs. Fagan. Within a day or two after Mrs. Fagan began work in August, the louvers in the vent were changed and so arranged that a draft or current of air was focused upon her head. The day the change was made she became sensitive to the cold air current and developed a headache, which she treated with aspirin.

The following day the stream of air made her more uncomfortable, and besides pain in the right side of her head, her neck began stiffening, and ordinary movement in that region became painful and difficult.

Within less than a week she underwent medical treatment for the pain in this region of the right side of her head and neck, and an additional symptom appeared, a swelling in her neck. The swelling, a "pone", arose in the neck region near the base of her skull. She fixed the date of the change in the vent louver and her first pain as August 2nd or 3rd, 1960. Thereafter her pain and disability rapidly progressed, resulting in hospitalization and medical treatment. A qualified physician testified that chilled air blowing upon Mrs. Fagan's head and neck in the manner previously indicated could cause the injury she claimed. The physician diagnosed her condition as a fibrositis affecting the occipital nerve, or occipital neuralgia.

These facts establish that on the 2nd or 3rd day of August Mrs. Fagan was injured while she was engaged in the performance of her duties as an employee by the stream of refrigerated air flowing from her employer's air-conditioner vent. This stream of air was a hazard to which she was subjected as an employee, and a hazard she would not have been equally exposed to, apart from her employment. As the law and facts are understood, hers is a compensable injury.

*Physical Facts.* Mrs. Fagan plead that her injury was produced by cold air blowing upon the top and right side of her head and neck. The insurer claims the undisputed physical facts exclude the probability of an injury in this manner. When Mrs. Fagan was seated at her machine and worktable she faced to the northeast. The flow of material she worked upon came to her from the south, her right rear. Almost due north of her working position was the subject air vent, about ten feet above the floor and some twelve feet distant from her head. A current of air issuing out of the vent towards her would first strike her left temple. The insurer argues that the stream of air did not reach the back, and right side of her head as she claimed, but indisputably struck her left temple, a point sub-

stantially opposite the right side of her head and neck. These facts will be analyzed.

A jury might have construed this evidence as the insurer does, that once Mrs. Fagan took her seat at her machine she became absolutely immobile; a more reasonable construction would be that in the course of her work Mrs. Fagan raised, lowered, and turned her head from side to side, turned to reach for material as it flowed to her from her right and rear, and that there would be general and frequent movement of her body throughout a working day. Such movement on her part would present all sides of her head and neck generally to the air draft. There is another weakness in the insurer's argument. Assuming the stream of cold air first reached her right temple, unlike a stream of water it would not immediately fall away. On the contrary, it would create a generally cooler atmospheric condition in the vicinity around and about Mrs. Fagan's head than elsewhere. The proven physical facts do not exclude the occurrence of Mrs. Fagan's injury, if any, substantially in the manner she claimed.

*Weight of Evidence.* This point overlaps to some extent the subjects just discussed, and goes to the proof as a whole. Space will not permit more than a suggestion of the scope of the evidence which, in its condensed form, is not altogether satisfactory in clearly demonstrating the conclusions reached.

The insurer offered evidence that there was no blast of air from the vent. As previously mentioned, Mrs. Fagan tendered testimony directly to the contrary. Testimony is in the record that occipital neuralgia clears up in a few weeks. To the contrary, Mrs. Fagan claimed to be suffering its effects even at the time of trial in December, 1961. Mrs. Fagan claimed a severe limitation in side to side movement of her head; that she could not so move it. One of the examining physicians testified to watching her at a street intersection turn her head from side to side to observe traffic. There are other incongruities, conflicts and contradictions, such as the time the vent louvers were readjusted, and the time Mrs. Fagan first claimed to feel injury or discomfort from the cold air stream, etc.

Basically the credibility of the witnesses is put in issue by evidence of this nature. Resolving such an issue is the traditional function and prerogative of the jury. The proof as a whole is not overwhelming in weight or preponderance unless a substantial part of that offered by Mrs. Fagan is disregarded as being unreliable. The jury having the benefit of observation, etc., of the demeanor of the witnesses, chose to give weight to Mrs. Fagan's proof. This court is not in a position to say that the jury made a mistake.

The insurer's Ninth Point of error is directed to the admission in evidence of a qualified medical witness's reply to a hypothetical question. The question as propounded related pertinent facts in evidence, including those concerning Mrs. Fagan's exposure to the stream of cold air from the air vent, and required the physician to state whether or not such exposure could cause occipital neuralgia. The answer given was, "It is possible". Admission of the answer was not error. American General Insurance Company v. Barrett, Tex.Civ.App., 300 S.W.2d 358, N.R.E.; Trader's & General Ins. Co. v. Hill, Tex.Civ.App., 161 S.W.2d 1101, N.W.H.; El Paso Electric Co. v. Beckman, Tex.Civ.App., 89 S.W.2d 470, err. dism.; Republic Underwriters v. Howard, Tex.Civ.App., 69 S.W.2d 584, err. dism. See also very similar medical testimony said to have probative force in Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581, at page 583–584.

The insurer's remaining points of error have been carefully studied. No error is found requiring a reversal of the judgment, and the insurer's several points are overruled. The judgment of the trial court is affirmed.