**CONSOLIDATED UNDERWRITERS,**
Appellant,

v.

**John Victor WRIGHT, Appellee.**

No. 14856.

Court of Civil Appeals of Texas.

Houston.

Oct. 27, 1966.

Rehearing Denied Nov. 17, 1966.

Joseph D. Cheavens, Paul W. Persons, Houston, Baker, Botts, Shepherd & Coates, Houston, of counsel, for appellant.

Frank T. Abraham, W. James Kronzer, Houston (Brown, Kronzer, Abraham, Watkins & Steely, Houston, Spinn, Ehlert & Spinn, Brenham, of counsel), for appellee.

WERLEIN, Justice.

This is a compensation suit brought against appellant, Consolidated Underwriters, by appellee, John Victor Wright, who alleged that he sustained accidental damage on or about March 5, 1963, and July 29, 1963, while in the course and scope of his employment for Texas Bolt Company. The jury found that appellee sustained an accidental injury which caused total incapacity beginning March 5, 1963, and continuing for six weeks, and partial incapacity beginning July 25, 1963, which was permanent. The jury also found that appellee's incapacity was not solely caused by any prior disease or prior bodily infirmity existing before March 5, 1963, disconnected with and not aggravated by the injury of March 5, 1963. The court, on the jury verdict and stipulation that appellee was entitled to receive his compensation, if any, in lump sum, entered judgment for appellee in the sum of $7,727.96.

In its first point appellant asserts that the trial court erred in overruling appellant's plea to the jurisdiction and in abatement because there was a fatal variance between appellee's claim before the Industrial Accident Board and the case as pleaded and submitted to the jury.

On August 24, 1963, appellee filed his notice and claim with the Industrial Accident Board on one of its printed forms entitled "Notice of Injury from Occupational Disease and Claim for Compensation for Injury from Occupational Disease." To the inquiry on such printed form reading: "Date of first distinct manifestation of disease occurred on" appellee stated: "March 5, 1963." To inquiry: "Date last injuriously exposed to hazards of disease" appellee stated: "July 29, 1963"; in response to inquiry as to whether appellee had worked for any other employer since his incapacity began, appellee answered, "Worked for same employer from April 22, 1963 to July 29, 1963." To inquiry as to when he started losing time, appellee answered, "March 5, 1963"; to inquiry as to whether he had re-

turned to work, he answered, "Yes, temporarily from April 22, 1963 until July 29, 1963, and have not worked since that date." To the inquiry, "Describe nature of occupational disease and cause of disease," appellee answered, *"Injury and irritation of lung tissues and bronchi* (breathing tubes) caused from breathing gas fumes, etc. from furnaces in plant." (emphasis ours)

On another of the Board's forms appellee informed the Board that he was *injured* at his employer's place of business at 10 a.m. on March 5, 1963, and that he reported the *injury* on that date to his employer's superintendent. He was sent to a doctor by his employer. In a letter to the Board received January 15, 1964, appellee, inquiring why he had not received any compensation, started his letter by stating: "I am writing in regard to a accident * * *" The Industrial Accident Board on June 22, 1964, made its award in which it stated that "The Board finds that the evidence submitted fails to establish that the claimant suffered a compensable occupational disease in the course of employment for subscribing employer herein as alleged. Therefore, said claim is denied."

In his original petition appellee alleged, among other things, "Within the statutory time, your Plaintiff filed notice of injury from occupational disease and made claim for compensation for such occupational disease before the Industrial Accident Board of Texas." He also alleged that he "filed this suit in this Court of competent jurisdiction to further prosecute his claim for workmen's compensation insurance benefits." Appellee further alleged in his petition that "On or about March 5, 1963, and July 29, 1963, your Plaintiff was working in the course and scope of his employment for Texas Bolt Company in Harris County, Texas. While performing his duties for his employer on said dates, your Plaintiff suffered accidental damage and harm to the physical structure of his body in the nature of inhaling of noxious gas and fumes, causing damage and harm to his bronchial tubes, lungs and respiratory

system. As a result of said injuries, your Plaintiff has been substantially unable to perform the material tasks of a workman, and therefore has been disqualified from obtaining and retaining employment as such, consequently entitling him to total compensation benefits under the Workmen's Compensation Act of Texas, either for an accidental injury under the law or as an occupational disease, in the amount of Thirty-five Dollars ($35) per week for a period of 401 weeks, as allowed by law."

The evidence shows that appellee, who had only a seventh grade education, was engaged in making boxes for his employer, and that his place of work was in an upper level or attic of his employer's office building, where he was practically surrounded by boxes piled ten feet high, and there was considerable heat and little or no ventilation, and where smoke and fumes from the heat treating units would "roll over here and come in, suck into back of my fan and onto me." The potholes in the roof of such building were closed and, as appellee testified, there was no way for the fumes to escape. Appellee was the only employee who worked in the attic of the building. He testified that he was told not to open the potholes. He described the occurrence of March 5, 1963 as follows:

"Well I was working on—up there and the fumes and smoke was very bad and I found myself getting dizzy and I choked off and then I staggered myself to the front where I tried to get a little air and I set down on a box there until I could gain enough strength to see the ladder—I couldn't hardly see the ladder as I come down the ladder and I said to the superintendent Mr. Anderson—that gas is killing me—I am a sick man—and he looked at me and wrote out a letter to go to the doctor."

He further testified that he did not go to the doctor's office immediately but lay down in his car for about an hour until he felt he was able to drive. He was given oxygen treatment. Appellee further testi-

fied that before the accident he had never had any persistent difficulty in breathing or lung difficulty of any kind or chest pain of which he was aware. He testified that since such occurrence if he walked a block or two or did much talking he was out of wind; that he could not breathe and had to quit singing in church because his breath was so short and that when he breathed hard he developed a severe pain in his chest. He was given treatments for about a year or more. He tried to go back to work and worked two or 2½ days "along the last of July" but that he was unable to stand up under the work; that he was getting no better and could not hold down any job on a full-time basis; that he had had no chest trouble before. He testified the fumes had been bothering him for several months before he finally got sick, but on that day of March 5, 1963 he got especially sick and went to the doctor.

Ernest Williams, a fellow employee who had worked for the Texas Bolt Company for some 15 years, testified with respect to the gas and the heat treating units, and also testified:

"I don't know if he fell out or not but I know he come downstairs and he had been around walking to the doors and I asked what was wrong and he said those gas fumes are sure strong and I did go up there and they sure was strong."

There is also evidence that appellee tried to work on July 29, 1963, but was unable to do so on account of his condition.

In appellant's letter of June 16, 1964, to the Industrial Accident Board the question of traumatic injury was placed in issue in that appellant's representative said:

"1. That, it is denied that the claimant sustained any manner of accidental injury or occupational disease while in the employ of our assured.

"2. That, it is denied that this claimant has lost any time from work due to trauma or occupational disease.

"3. That, it is denied that this claimant has suffered any permanent defect or loss of wage earning capacity due to the trauma or occupational disease.

"4. That, it is our contention that this claimant's true condition and all of his symptoms are all unrelated to trauma and are not due to any substance or fumes encountered in our assured's plant; that the claimant's condition is non-occupational in every respect."

The law governing fatal variance between claims filed with the Board and suits filed in court is stated in Booth v. Texas Employers' Insurance Association, 132 Tex. 237, 123 S.W.2d 322, as follows:

"The rule as to suits filed by an injured employee is that the amount of the claim before the Industrial Accident Board is immaterial upon the issue of jurisdiction of the court selected to review the award, the only essential jurisdictional connection between the claim for compensation before the board and the suit to set aside the award being the identity of the injury of which complaint is made."

In that case Judge Smedley also said:

"Usually the claimant has no knowledge about the jurisdiction of courts and has little information as to the measure or extent of the compensation to which he may be entitled under the law. * * The statute was so written as to permit the injured employee in filing his claim to make known to the board without formality the fact that he has been injured in the course of his employment and that he claims the compensation to which he is entitled under the law for the injury suffered, * * *

" *    *    *    *    *    *
"It has repeatedly been held, that, although one claim cannot be filed with the board and another and different claim asserted in court, yet when the injury suffered is of that class of injuries, sometimes called general injuries, for which

the compensation is based upon incapacity to work, and not of that class of injuries usually called specific injuries, for which the amount of compensation is fixed by the statute, a general description of the injury is sufficient in the claim made before the board, and that in the suit filed to set aside the award of the board the claim may be enlarged to include all injuries proximately resulting from the accident."

The question before us is whether or not there is a fatal variance between the claim presented to the Board and that prosecuted in court, and further whether or not the jurisdictional requirement of "identity of the injury" has been sufficiently met in the instant case. There is no contention that appellee received an injury at a different time or place than that claimed before the Industrial Accident Board, and which the jury found was on March 5, 1963. Appellee claimed in his notice to the Board and also in his original petition filed in court, that he had received an injury. The Workmen's Compensation Act of Texas, under Article 8306, Section 20, entitled " 'Injury' and 'personal injury' defined: occupational disease, what are" defines both conditions as being injuries.

"Sec. 20. Wherever the terms 'injury' or 'personal injury' are used in the Workmen's Compensation Law of this state, such terms shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom. Unless from the context the meaning is clearly to the contrary, such terms shall also be construed to mean and include occupational diseases, as hereinafter defined. * * *"

Thus, the term "injury" is construed to mean damage or harm to the physical structure of the body and includes occupational diseases. In Solomon v. Massachusetts Bonding & Insurance Co., Tex.Civ.App., 347 S.W.2d 17, writ ref., cited by appellant, the court stated:

"An industrial accident or accidental injury can always be traced to a definite time, place and cause, whereas an industrial disease is of slow and gradual development, and the time, place and cause thereof are not susceptible of definite ascertainment."

In that case the variance was obvious in that the claim before the Board relied on an accident alleged to have occurred on June 24, 1956, in San Antonio, Texas, whereas in his pleading appellant relied on one alleged to have occurred on or about January 1, 1954 at or near Eagle Pass, Texas. Thus there was a discrepancy of almost two and one-half years in the time, and more than 100 miles in the place of the accident. Certainly the jurisdictional requirement of "identity of the injury" was not met.

In presenting his claim to the Board appellee stated that he received "injury and irritation to lung tissues and bronchi caused from breathing gas fumes, etc., from furnaces at plant." The claim before the Industrial Accident Board was the same incident, occurrence and condition as the cause of action before the court. The occurrence was described both before the Board and in court, giving the time, place and nature of the particular incident and injury suffered by appellee. Appellee alleged in his original petition that at a specific time and place he suffered an accidental damage and harm to the physical structure of his body, and that as a result of said injury he had been disabled. At the trial he offered evidence showing that he suffered such injury on March 5, 1963, and the jury so found. In his notice and claim filed with the Board, although the same was filed on the Board's form covering occupational disease, the same claim or cause of action was set out. In Booth v. Texas Employers' Insurance Association, supra, the court said: "We do not attach controlling importance to the form presented by the Board." The court also said that, " * * * the statute does not undertake

to prescribe the form or manner of making claims * * *"

In Texas Employers' Insurance Association v. Cross, Tex.Civ.App., 358 S.W.2d 156, writ ref., n. r. e., the San Antonio Court held that the fact that contact dermatitis is listed as an occupational disease does not prevent the claimant from recovering for contact dermatitis as an accidental injury when the onset is at a definite time or place. The latter requirement seems to be the only prerequisite to a recovery under the general injury provision for a listed occupational disease. There are numerous cases decided by our Texas courts in which damage from breathing fumes or noxious gases have been treated as accidental injuries. In Maryland Casualty Co. v. Rogers, Tex.Civ.App., 86 S.W.2d 867, writ ref., pneumonia contracted by a workman was held to be an injury. In Aetna Insurance Co. v. Hart, Tex.Civ.App., 1958, 315 S.W.2d 169, writ ref., n. r. e., it was stated: " * * * there is nothing in the Workmen's Compensation Act which requires that the injury be the result of an accident. * * * if an injury is shown to have been received by an employee while he is acting within the course of his employment and such injury is the result of a risk or hazard of the employment, it is compensable under the Workmen's Compensation Act." In the recent case of Travelers Insurance Co. v. Fagan, Tex. Civ.App., 366 S.W.2d 885, writ ref., n. r. e., neuralgia from an air conditioning draft was held to be a compensable injury. In Maryland Casualty Co. v. Broadway, 5th Cir., 110 F.2d 357, the court said: "But if the bodily injury is referable to a definite occurrence or series of occurrences in the work, to which a time and place may be assigned, it may be compensable though it does not result instantly."

■ It is true that the Industrial Accident Board, in its award, stated that the evidence failed to establish a compensable occupational disease. The Board in fact, however, denied appellee's claim as asserted

by appellee regardless of the Board's designation of such claim. The claim before the Board, in view of the correspondence, appellee's letter referring to his accident, and the statements made by appellee in instruments filed with the Board, was broad enough to cover an injury which resulted to appellee at a definite time and place while acting within the course and scope of his employment. Although the printed words on one of the Board's forms seem to restrict the claim to an occupational disease, the words typed by appellee in the blank spaces on such form indicate that he was claiming compensation benefits for an injury which occurred at a definite time and place. On the other form entitled, "Employee Hearing and Statement" nothing is said with reference to occupational disease. The statement clearly states that appellee was injured at his employer's place of business at 10 a. m. on March 5, 1963, and reported the injury that day. Thus, such claim and the claim prosecuted in court are the same claim. Both claims seek compensation benefits for an injury which occurred at appellant's plant on March 5, 1963 as a result of inhaling fumes. In our opinion the jurisdictional requirement of identity of the injury has been sufficiently met in the instant case, especially in view of the fact that the Workmen's Compensation Act should be liberally construed in favor of the injured party. In Miears v. Industrial Accident Board, 1950, 149 Tex. 270, 232 S.W.2d 671, at page 675, the court said:

"It is settled law that the Workmen's Compensation Act should be construed liberally in favor of the injured workman, Huffman v. Southern Underwriters, 133 Tex. 354, 128 S.W.2d 4; 45 Tex.Jur., 'Workmen's Compensation,' Section 7, and it would therefore not be proper to supply by implication a restriction on the employee's rights which is not found in the language of the statute."

See also Texas Employers' Insurance Ass'n v. Evers, Tex.Civ.App., 242 S.W.2d 906, writ ref., n. r. e., and authorities cited.

Appellant's plea to the jurisdiction and in abatement because of an alleged variance in the claim before the Board and that asserted in court, was a part of its motion to set aside the judgment of the court. Such motion was not filed until January 26, 1966, although the court's judgment was entered December 15, 1965. The potential jurisdiction of a court and its jurisdiction per se over the subject matter of a suit may be questioned at any time when it appears of record. In the instant case the only jurisdictional question is based upon an alleged fatal variance between the claim as presented before the Board and the claim as prosecuted in court. Unless there was an actual fatal variance appellant's contention could not be reached by a plea to the jurisdiction. We are of the opinion that there was no such fatal variance.

■ Furthermore, since appellant's contention is directed principally toward the pleadings or instruments presented to the Board and the pleading filed in court, it is our view that the alleged variance should not have been presented by a plea to the jurisdiction but by special exceptions to the pleading which would have afforded appellee an opportunity to amend his pleading if defective. In Mozley v. American General Insurance Company, Tex.Civ.App., 324 S.W.2d 925, writ ref., n. r. e., the court said: "This fatal variance in the claim presented to the Board and the one stated in the trial amendment should have been presented by special exception to the pleadings, rather than by a plea to the jurisdiction, inasmuch as the matter arose from the pleadings."

We are of the opinion, as stated, that there was no fatal variance between the claim as presented to the Board and that prosecuted in court, and further that in the event it could be said that there was such variance appellant has waived the same since after the promulgation of Rule 90, Texas Rules of Civil Procedure, the failure to attack an adverse pleading for alleged jurisdictional defects until after judgment constitutes a waiver of such an attack. Olivares v. Service Trust Company, Tex.Civ.App. 1964, 385 S.W.2d 687; Baker v. Highway Ins. Underwriters, Tex.Civ.App., 209 S.W.2d 979, writ ref., n. r. e.; Erminger v. Daniel, Tex.Civ.App., 185 S.W.2d 148, writ ref., w. m.; Litterst v. Edmonds, Tex.Civ.App., 176 S.W.2d 342, writ ref., w. m.; Rule 90, T.R. C.P.

■ Appellant asserts that the court erred in overruling its motions for instructed verdict, and also for failing to enter judgment in its favor notwithstanding the verdict of the jury on the ground that there was no evidence that appellee had sustained an accidental injury and no evidence to support the jury's verdict, and further that the court erred in overruling its motion for new trial because there was insufficient evidence to support the jury's verdict that appellee had sustained an accidental injury. Appellant's assignment that there was insufficient evidence to support the jury's verdict is raised for the first time in its brief. In its amended motion for new trial the grounds on which appellant contends support its point complaining of insufficient evidence to support the jury verdict, do no more than allege that the trial court erred in refusing and overruling appellant's objections and exceptions to the charge submitting Special Issues Nos. 1, 2 and 3 because of alleged "insufficiency of the evidence". Such complaints do not raise the insufficiency of the evidence to support the jury verdict. Garza v. Alviar, Tex.Sup.1965, 395 S.W.2d 821; McDonald v. New York Central Mutual Fire Ins. Co., Tex.Sup.1964, 380 S.W.2d 545; Solgaard v. Texas & N. O. R. Co., 1950, 149 Tex. 181, 229 S.W.2d 777; Calvert, 38 Tex. Law Review 361. Nevertheless, we have read the entire statement of facts and carefully examined the exhibits, and have concluded that there was an abundance of evidence warranting submission of such issues. Furthermore, in considering all of the evidence, both that favorable to the jury's finding of accidental injury and that

militating against such finding, we have concluded that such finding is not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In re King's Estate, 1951, 150 Tex. 662, 244 S.W.2d 660.

Much of appellee's testimony has been set out hereinabove and will not be repeated. We might add, however, that there were no exhaust fans for the potholes before the accident, but some were installed after the accident, and also that the last two heat treatment units were installed in December and then put in operation. Red hot screws, bolts and nuts were placed in a bath of oil in the heat treatment units and these gave off smoke and fumes. The oil bath consisted of approximately 85% water and 15% rust preventative.

Dr. Waller, who gave appellee oxygen treatments, advised him to remain away from work for an indefinite period. Appellee then went back to his home town, Brenham, Texas, where Dr. Schoenvogel treated him. Appellee testified that after the two heat treatment units were installed in December, he had been bothered some with his eyes watering and his nose and throat burning, but on this particular occasion he got especially sick, became dizzy, and was choked off, had to stagger down from his working position, and reported that the gas was killing him. Mr. Anderson, the plant superintendent of appellee's employer, was present on the day that appellee choked up and requested permission to go to the doctor. He gave the following testimony:

Q Did you observe him in his condition at that time?

A I can't remember, it is vague—and he was pretty well choked up—I'll say that.

Q Do you remember him complaining that the fumes or vapors above his office had got him?

A He said that—yes, sir.

Dr. Schoenvogel testified that appellee had a decrease in his lung capacity of 40 to 50% caused by damage to the alveoli lining of the lungs and lung tissue due to the inhalation of gas fumes, and that such condition was permanent. Dr. Abbe Ledbetter, in answer to a hypothetical question, testified that in his opinion appellee's exposure to the fumes on the day he fell out on the job on or about March 5, 1963, was a producing cause of his trouble and disability, and that his condition was permanent. It seems obvious that although appellee had been exposed to smoke and fumes previously, there was an unusual and heavy concentration of the same on March 5, 1963 which caused him to choke up and fall out on the job. Appellee testified that he had not had any chest trouble whatever before. The fact that he had been bothered to some extent since December with his eyes and throat does not militate against the fact that on the particular occasion he suffered an accidental injury to his lungs. See Texas Employers' Ins. Ass'n v. Bradford, Tex.Civ.App., 381 S.W.2d 234, writ ref., n. r. e., where it was held that the dropping of a sack of cement causing dermatitis was held to be an accidental injury, although there had been some dermatitis existing to some extent before from working around the cement. In Safety Casualty Co. v. O'Pry, Tex.Civ.App., 187 S.W.2d 578, writ ref., w. m., the inhalation of gas and fumes causing the tubercular condition was held compensable as a personal injury. It was only necessary for appellee to prove that his injury was referable to a definite occurrence to which a time and place and cause could be assigned, in order for him to be entitled to compensation benefits under the statutory definition of "compensable injury". See Maryland Casualty Co. v. Broadway, supra; Texas Employers' Insurance Association v. Cross, supra; Maryland Casualty Co. v. Rogers, supra; Aetna Insurance Co. v. Hart, supra, and Travelers Insurance Co. v. Fagan, supra. It is our view that the evidence abundantly shows that the injury to appellee is traceable to the occurrence that happened

on the morning of March 5, 1963 in his employer's place of business.

In its next three points, appellant complains that the court erred in refusing to define "accidental injury" as requested in its Instruction No. 2 contending that the definition given in the charge did not properly distinguish between an accidental injury and an occupational disease, and further that the court refused to submit in its charge to the jury its requested Special Issue No. A relating to whether or not any incapacity of appellee was the result of disease.

The trial court defined "accidental injury" as follows:

"By the term 'accidental injury', as used in this charge, is meant an undesigned, unforeseen, or unexpected occurrence or mishap causing harm or damage to the physical structure of the body, and such diseases or infections as naturally result therefrom, or the incitement, acceleration, and aggravation of any disease previously or subsequently existing by reason of such damage or harm to the physical structure of the body."

■ Appellant in its objections and exceptions to the court's charge did not object or except to the court's definition of "accidental injury" on the ground that it did not properly distinguish between an accidental injury and occupational disease. Therefore, it may not now do so. It sought in its motion for new trial to amplify the grounds of its objections so as to include its present complaint. Such attempt on its part is of no avail. Appellant specially requested submission of its Instruction No. 2 defining "accidental injury" as follows: "By the term 'accidental injury' is meant an injury resulting from an undesigned, unforeseen, or unexpected occurrence or mishap, traceable to a definite time and place." The request to submit such instruction or definition did not constitute an objection to the instruction as submitted by the court.

Hodges on Special Issue Submission in Texas (1959), Sec. 70, pars. 173–175.

■ It is our view that the court properly refused appellant's requested definition No. 2. The requested definition is not a "substantially correct definition". The omission from such requested instruction that the "occurrence or mishap" must cause "harm or damage to the physical structure of the body, and such diseases or infections as naturally result therefrom" makes such requested definition incorrect and improper. An injured employee is entitled to recover under the general provisions of the Workmen's Compensation Act, apart from the "occupational disease" section, if the accident produces damage or harm to the physical structure of the body and diseases or infections naturally result therefrom. Hence, the definition requested by appellant was not substantially correct. City of Houston v. Watson, Tex.Civ.App. 1964, 376 S.W.2d 23, writ ref., n. r. e.; Superior Ins. Co. v. Burnes, Tex.Civ.App., 278 S.W.2d 934, writ ref., n. r. e.

Appellant's Special Issue No. A was properly refused by the court. The issue reads:

"Do you find from a preponderance of the evidence that the condition of the plaintiff, John Victor Wright, producing the incapacity which you have found, if any, is not the result of disease? * * *

"By the term 'disease', as used in the above special issue is meant the slow and gradual development of a condition over a long period of time."

■ In the first place the issue and definition are incorrect in that an "occupational disease" is one which from common experience is recognized to be incidental to the type of employment in question and "is the usual and ordinary result incident to the pursuit of an occupation * * *" Texas Employers' Ins. Ass'n v. McKay, 1948, 146 Tex. 569, 210 S.W.2d 147. Furthermore, the issue and definition fail to

distinguish occupational diseases from those diseases which flow naturally from damage or harm to the physical structure of the body and which are compensable as "accidental injuries." The law is well settled that the injured employee is entitled to recover for injury consisting of damage or harm to the physical structure of the body and diseases that naturally result therefrom. A finding favorable to appellant to such issue would not establish that the disease was not traceable to harm or damage to the physical structure of the body and hence compensable as an injury.

Judgment affirmed.