**Wilbur V. JOHNSON, Petitioner,**

v.

**AMERICAN GENERAL INSURANCE COMPANY, Respondent.**

No. B–2312.

Supreme Court of Texas.

Jan. 6, 1971.

As Modified on Rehearing Feb. 24, 1971.

Mike Willatt, Houston, for petitioner.

Vinson, Elkins, Searls & Connally, Louis E. McCarter, Houston, for respondent.

GREENHILL, Justice.

The only question in this workmen's compensation suit is whether there is a fatal variance between the claim presented to the Industrial Accident Board and that presented in court. The trial court held that there was not; and based upon the jury's verdict, the workman recovered for permanent partial disability. The Court of Civil Appeals reversed. It rendered judgment that the plaintiff workman take nothing on the ground that the trial court should have sustained the defendant's plea to the jurisdiction of the trial court because of the fatal variance. It reasoned that the workman sought compensation before the Board for an accidental injury received at a particular time and place, and that such a claim was at fatal variance with his claim in court that he suffered an occupational disease. 456 S.W.2d 188. We reverse the judgment of the Court of Civil Appeals and remand the cause to that court to pass upon other points it had not considered.

The problem with regard to variance is that the Legislature has prescribed a general scheme whereby claims for compensation must first be presented to the Board. It must have the opportunity to pass on the claim before it is presented in court. If a party is dissatisfied with the award of the Board on the claim there made, he may then obtain a trial de novo in the district court. But for the court to have jurisdiction, the claim sued upon must first have been presented to the Board. Hartford Accident & Indemnity Ins. Co. v. Choate, 126 Tex. 368, 89 S.W.2d 205 (1936). In *Choate*, the workman received burns; but he specifically informed the Board that he was limiting his claim to the loss of sight of his left eye. In the trial before the court, he sought to add recovery for injuries to other parts of his body. The holding was that since the claim to the Board had been specifically limited to the eye, the court was without jurisdiction to pass on other injuries not submitted first to the Board. This court recognized, however, that where injuries are generally described to the Board, the claim of the workman "upon appeal to the courts may be enlarged to include all injuries proximately resulting from the accident complained of." 89 S.W.2d at 207.

Similarly in Solomon v. Massachusetts Bonding & Insurance Co., 347 S.W.2d 17 (Tex.Civ.App. 1961, writ refused), the workman alleged before the Board an injury which he received in San Antonio in June of 1956. But when he got to court, he sought to recover for an injury received in Eagle Pass in January of 1954. The discrepancy of two and a half years of time and 100 miles of distance was too much. It was a fatal variance.

On the other hand, the statutes have not prescribed the manner or form for making a claim. No provision is made for pleadings or for the formality of procedure before the Board. It is desirable that the procedure be of such simplicity that the injured employee will be able to file his claim by himself in his own terms. He may have little knowledge of medicine or the law. A purpose in the filing of the claim is to give such information as will identify the injury or condition and serve as a basis for proper investigation, hearing and determination of the claim. The notice must describe an injury or a condition that is potentially compensable; and on appeal there must be, at least in general, an identity of the injury or condition presented to the Board. Booth v. Texas Employers' Ins. Ass'n., 132 Tex. 237, 123 S.W.2d 322 (1938); Consolidated Underwriters v. Wright, 408 S.W.2d 140 (Tex.Civ.App. 1966, writ ref., n.r.e.); Petray v. Travelers Ins. Co., 393 S.W.2d 711 (Tex.Civ.App. 1965, writ ref., n.r.e.).

There is, of course, a statutory difference between an accidental injury received at a particular time and place and an occupational disease acquired over a period of time. But, as set out in the *Wright* opinion cited just above, the term "injury" is defined and construed to mean damage or harm to the physical structure of the body and includes occupational diseases.[1] The Board has different printed forms for claims for accidental injuries and for occupational diseases; but the *Wright* case also held that it was not a fatal variance for a workman to use the wrong form before the Board. In that case, the workman used the form for occupational disease; but upon trial de novo, he was permitted to recover for a general injury, there being an "identity of injury" alleged.

With the foregoing principles in mind, we turn to the matter before us. The facts and the details of the papers filed with the Board by the various parties are set out in the opinion of the Court of Civil Appeals, and they need only be summarized here.

1. Article 8306, Sec. 20, Vernon's Texas Civil Statutes Annotated. All statutory references herein are to such publication.

The worker, Wilbur Johnson, was a welder with a fifth grade education. He had worked for the Texas Electric Steel Casting Company for fourteen years in close proximity to molders, sandblasters, sand shakeout operations and grinding machines. On November 6, 1965, while welding in an unventilated 10 by 12 foot booth, he was stricken by what doctors at first believed to be a heart attack. He was hospitalized and lost 14 days work. After returning to work he was given a welding booth with an exhaust fan; but approximately four weeks later, he again lost consciousness on the job. His condition was diagnosed as silicosis *after* his claim for compensation was filed with the Board.

Apparently the first instrument filed with the Board was submitted by the company as its "Employer's First Report of Injury." It stated that "employee alleges occupational disease." At another place, the company stated "Disease alleged."

The claim submitted by Johnson, the worker, was on the printed form for accidental injury and not on the form for occupational disease. The printed portion says, "I was injured on _____." The blank was filled in "November 6, 1965." This was the date on which Johnson was first taken from the job to the hospital with the suspected heart attack. In the blank following the printed words, "Describe Accident and Your Injury (in your own words)," there was written, "While close in with very poor ventilation or no ventilation, plaintiff inhaled too much sand, chemicals, carbon, and other foreign matters and impurities and deleterious matters injuring his lungs, nerves throughout the body, general health and other injuries."

The claim, received by the Board on January 25, 1966, was transmitted by a letter from an attorney which stated, "I en-close herewith Notice of Injury and Claim for Compensation in the above case." The attorney requested an early hearing. The Board, on February 3, wrote the parties of the setting of the hearing for March 8, 1966; and in the blank in its printed form for "nature of injury", it wrote "Respiratory tract damaged due to inhalation of chemicals on job."

On March 23, the Board entered its order denying the workman any relief with the statement that "The Board finds that the evidence submitted fails to establish that the claimant suffered a compensable injury . . . ."

The worker's claim was filed with the Board on January 9, 1966; but he did not have a medical diagnosis of silicosis until February 22, 1966. This diagnosis, however, was made before the Board's hearing. The record contains no evidence that the diagnosis was communicated in writing to the Board, and there is no evidence as to whether it was or was not communicated to it orally at the hearing.

Since Johnson was denied all relief by the Board, he filed suit. His original petition alleged accidental injury on November 6, 1965, from inhaling the impurities. His first amended original petition, signed by a different attorney, alleged a general injury; but in the alternative, it alleged an occupational disease, silicosis. His second amended original petition, on which the case went to trial, was pitched squarely on silicosis.[2] The insurance company denied liability, denied that Johnson had silicosis, or that he was disabled. It did not, at that time, file a special exception or a plea to the jurisdiction because of any alleged fatal variance between the claim before the Board and that in court.

The jury found that Johnson did suffer from silicosis as a result of injurious exposure to silica dust at his place of employ-

2. The allegation was that "on or about the 6th day of November, 1965, Johnson . . . sustained an accidental injury to his body, namely Silicosis. . . ." The allegations were that the silicosis first manifested itself on November 6, 1965, and that silicosis was an occupational disease.

ment; that he was incapacitated thereby; and that the incapacity was partial but permanent.

Then for the first time, the insurance company filed its plea to the jurisdiction. It moved that the case be dismissed for want of jurisdiction because of the alleged fatal variance between the claim before the Board and the claim in court. It asserted that Johnson had not claimed occupational disease before the Board but had sued on it in court. The trial court overruled the motion and entered judgment for Johnson on the verdict. As stated, the opinion of the Court of Civil Appeals was that the trial court should have sustained the plea to the jurisdiction. It rendered a judgment of reversal and that plaintiff take nothing.

When we test the foregoing facts by the general principles set out at the beginning of this opinion, we reach the conclusion that there was not such a fatal variance between the claim called to the attention of the Board by the workman and the basis for his recovery in court.

The statute defines silicosis as "the characteristic fibrotic condition of the lungs caused by inhalation of silica dust." Art. 8306, Sec. 26(a). There is evidence that silica [silicon dioxide] "makes up a good bit of our earth." "It's in the sand. . . ." The silica dust affects the lining of the lungs causing fibrous or scar tissue. Silica dust causes silicosis which is one of the forms of pneumoconiosis. In short it is a disease of the lungs caused by inhaling sand dust. The claim filed with the Board by the workman said that while working in a poorly ventilated room, he "inhaled too much sand and deleterious matters injuring his lungs. . . ." The employing company reported that "Employee alleges occupational disease." The Board's notice of the hearing stated that the nature of the injury was "respiratory tract damaged due to inhalations of chemicals on the job." The Board was also told that the plaintiff Johnson had been working at this job some fourteen years.

We are aware of cases in which workmen have been held to have suffered an accidental injury by inhaling large amounts of chemicals at one time and place, and that inhaling deleterious matter does not always point to an occupational disease. Here, however, the Board had before it sufficient facts and information, to place within its jurisdiction the occupational disease of silicosis. This is particularly true in view of the statutory definition of silicosis, the nature of the plaintiff's employment, the length of his employment, the nature of his injury as stated, and the plain statement by the company that the workman alleged an occupational disease.

We regard this conclusion as sound under the holding of the *Booth* and *Wright* cases cited above.[3] Their teaching is that the function of the claim filed by the workman is to give information as to what happened and to serve as a proper basis for investigation, hearing and the determination of the claim. It is not intended that the claim filed be governed by any strict rules or formalities. It is not required of claimants that they know correct legal classification, the medical name of the disabling condition, or proper diagnosis of the injury or disease which causes their incapacity.

The Board is given power by statute to investigate the claims made to ascertain the facts surrounding the accidental injury or occupational disease.[4] If the information given to the Board is sufficient to bring the accidental injury or statutory oc-

3. Booth v. Texas Employers' Ins. Ass'n., 132 Tex. 237, 123 S.W.2d 322 (1938); Consolidated Underwriters v. Wright, 408 S.W.2d 140 (Tex.Civ.App.1966, writ ref., n. r. e.).

4. Article 8307, Sections 4 and 10. The power of the Board to hold hearings was enlarged by the amendment of Section 10 in 1969. Acts 61st Leg.1969, Ch. 18 § 9.

cupational disease within its jurisdiction, it has the power to pass upon the claim and to grant or deny relief. If the Board has had jurisdiction to pass upon the claim, and if there is a fair and substantial identity of the claim (whether it be an accidental injury or a statutory occupational disease) thereafter sued upon in court, then there is no fatal variance. We believe this to be the situation in the case before us.

The Respondent insurance company, the prevailing party in the court of civil appeals, had other points in its brief in that court upon which that court expressly did not pass. They included points that there was no evidence and that there was insufficient evidence to support the answers of the jury to special issues. We overrule the no evidence points, but we have no jurisdiction over the insufficiency points. Accordingly the judgment of the court of civil appeals is reversed and the cause is remanded to that court to pass upon the points it had not considered. McKelvy v. Barber (Tex.1964), 381 S.W.2d 59.

DENTON and DANIEL, JJ., not sitting.