# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-18-00663-CV
---

**Facility Insurance Company; Midwest Employers Casualty Company; ACE American Insurance Company; Houston General Insurance Company; UPS Ground Freight Inc.; Hartford Casualty Insurance Company; WC Solutions; Poly-America, LP; British American Insurance Company; Clarendon National Insurance Company; Sentry Insurance, A Mutual Company; St. Paul Fire & Marine Insurance Company; American Zurich Insurance Company; Employers Insurance Company of Wausau; Zurich American Insurance Company; CompPac Trust of Texas; Netherlands Insurance Company; American Home Assurance Company; and Fidelity & Guaranty Insurance Company, Appellants**

**v.**

**Vista Hospital of Dallas, Vista Medical Center Hospital, and Surgery Specialty Hospitals of America, Appellees**

---
### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-15-005812, HONORABLE KARIN CRUMP, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

This is an appeal in a suit for judicial review of an administrative decision.[1] The administrative decision arose from a dispute over reimbursement for workers' compensation medical benefits. Appellants are insurance companies, or "certified self-insureds," who provide coverage under the Texas workers' compensation system (collectively, the Carriers). Appellees are Vista Hospital of Dallas, Vista Medical Center Hospital, and Surgery Specialty Hospitals of America (collectively, Vista). Vista alleged systematic underpayment of claims by the Carriers

---
[1] *See* Tex. Gov't Code § 2001.901(a).

beginning in 2002. Vista initially claimed a "fair and reasonable" payment of 70%–100% of their billed charges. After a 2008 regulatory change required the kind of services that Vista rendered to be reimbursed at 200% of the Medicare allowable reimbursement going forward, Vista revised its calculations to that amount. A panel of State Office of Administrative Hearings (SOAH) judges issued a Decision and Order, awarding reimbursement to Vista based on its revised calculations because SOAH determined those amounts to be "fair and reasonable." The trial court affirmed SOAH's decision, and this appeal ensued.

In nine issues, which can be grouped into three categories, the Carriers challenge (1) alleged procedural problems with Vista's presentation of its case before SOAH, (2) the evidence supporting SOAH's findings and conclusions that the Carriers' reimbursement calculations did not result in "fair and reasonable" reimbursement to Vista (and that Vista's competing calculations did), and (3) SOAH's award of interest to Vista. We affirm.

## BACKGROUND

The underlying disputes are the latest in a long-running series between Vista and carriers of workers' compensation policies over reimbursement for covered medical expenses. *See generally Vista Med. Ctr. Hosp. v. State Office of Risk Mgmt.*, No. 03-17-00352-CV, 2018 WL 3999595 (Tex. App.—Austin Aug. 22, 2018, no pet.) (mem. op.); *Vista Med. Ctr. Hosp. v. Texas Mut. Ins. Co.*, 416 S.W.3d 11 (Tex. App.—Austin 2013, no pet.); *Vista Healthcare, Inc. v. Texas Mut. Ins. Co.*, 324 S.W.3d 264 (Tex. App.—Austin 2010, pet. denied).

### Legal Framework for Medical Reimbursement

State law requires that "health care reimbursement policies and guidelines" govern reimbursement of health care providers who provide services to injured workers

2

covered by workers' compensation.  *See* Tex. Lab. Code § 413.011(a); *Vista Med. Ctr. Hosp.*, 2018 WL 3999595, at \*1.  The Division of Workers' Compensation (Division),[2] housed within the Department of Insurance, is tasked with developing the fee guidelines that govern reimbursement for different types of medical care.  *See* Tex. Lab. Code §§ 401.011(8) (defining "commissioner" as "the commissioner of workers' compensation"), 402.00111(a) (providing that commissioner of workers' compensation administers Division), 413.011(a) (directing commissioner to adopt fee guidelines); *Vista Med. Ctr. Hosp.*, 2018 WL 3999595, at \*1.

Once the Division adopts a fee guideline for a certain type of medical care, workers' compensation carriers must reimburse providers of that type of care in accord with the guideline.  *See id.* (citing Tex. Lab. Code § 413.016(b)).  But if no fee guideline (or negotiated contract) applies to a certain type of medical care, carriers must reimburse providers of that type of care at "a fair and reasonable reimbursement amount." 28 Tex. Admin. Code § 134.1(e)(3) (2018) (Tex. Dep't of Ins., Div. of Workers' Comp., Medical Reimbursement).

### Vista and the Carriers' Disputes Over Vista's Bills

Vista provided outpatient medical services to injured workers from 2002 to 2008 under policies issued by the Carriers.  In the fifty-three instances underlying this appeal, Vista billed one or more of the Carriers for these services.  Vista's original bill in each instance was on a Uniform Bill (UB) form—the standard bill form required by the Division.  *See id.* § 133.10(b)(2)

---

[2] The disputes underlying this appeal involve health care services provided as far back as 2002, when the Division's predecessor agency, the Workers' Compensation Commission, administered the workers' compensation system.  *See Vista Healthcare, Inc. v. Texas Mut. Ins. Co.*, 324 S.W.3d 264, 265 n.1 (Tex. App.—Austin 2010, pet. denied).  "Effective September 1, 2005, the legislature abolished the Commission and transferred its statutory responsibilities and rules to the Division." *Id.* (citing Act of May 29, 2005, 79th Leg., R.S., ch. 265, §§ 8.001(b), .004(a), 2005 Tex. Gen. Laws 469, 607–08).  We use "Division" to refer to either or both of the predecessor agency and the current one, as the context requires.

(2018) (Tex. Dep't of Ins., Div. of Workers' Comp., Required Billing Forms/Formats). Vista computed its billed amounts according to its usual and customary fee schedule. Vista listed on the UBs the "procedure codes" corresponding with the services or procedures that it performed.

The Carriers paid Vista some, but not all, of the amounts requested. Vista asked the Carriers to reconsider and to reimburse it at 100% of the billed charges. When the Carriers refused, Vista requested Medical Dispute Resolution before the Division. *See generally* 28 Tex. Admin. Code § 133.305 (2018) (Tex. Dep't of Ins., Div. of Workers' Comp., MDR—General). Before the Division, Vista contended that "fair and reasonable" reimbursement required compensation at no less than 70% of its billed charges in each dispute.

Ultimately, the Division determined that Vista was not entitled to any reimbursement beyond what the Carriers had already paid. So, from 2004 to 2009, Vista sought de novo contested case hearings before SOAH for each of the fifty-three disputes, again contending that reimbursement at 70%–100% of its billed charges was "fair and reasonable."

The fifty-three disputes remained on SOAH's docket for several years.

### *Legal Developments While the Disputes Were Pending Before SOAH*

In the meantime, there were developments in the law affecting workers' compensation reimbursement.

In 2006, the Division promulgated Rule 134.1, which requires "fair and reasonable" reimbursement to be, among other things, "consistent with the criteria of Labor Code § 413.011." *See* 31 Tex. Reg. 3561, 3564 (2006) (formerly codified at 28 Tex. Admin. Code § 134.1(d)(1) (Tex. Dep't of Ins., Div. of Workers' Comp., Medical Reimbursement)), *renumbered to subsection 134.1(f) by* 33 Tex. Reg. 364, 393 (2008).

4

Labor Code section 413.011's "fair and reasonable" criteria expressly apply to the Division's creation of fee guidelines. *See* Tex. Lab. Code § 413.011(d) ("Fee guidelines must be fair and reasonable . . . ."). The criteria are that fee guidelines must be "designed to ensure the quality of medical care," must be "designed . . . to achieve effective medical cost control," and "may not provide for payment of a fee in excess of the fee charged for similar treatment of an injured individual of an equivalent standard of living and paid by that individual or by someone acting on that individual's behalf." *Id.* In the absence of a fee guideline for a certain type of medical care, that care must be reimbursed at "fair and reasonable" rates.

Following promulgation of Rule 134.1, Vista took the position that, for health care services for which the Division had not yet created any fee guideline, the rule could only require "fair and reasonable" reimbursement and could not also require that reimbursement comply with Labor Code section 413.011 because that statute expressly addresses only fee guidelines. *See Vista Healthcare*, 324 S.W.3d at 267, 269–71. Vista challenged the rule in separate reimbursement disputes from those at issue in this appeal. The Division interpreted Rule 134.1 as properly incorporating Labor Code section 413.011's criteria even when no fee guideline is in place, and, in 2010, this Court deferred to the Division's interpretation and rejected Vista's challenge. *See id.* at 272–73.

In 2008, the Division promulgated a new fee guideline to govern "medical services provided in an outpatient acute care hospital on or after March 1, 2008" (the 2008 Fee Guideline). *See* 28 Tex. Admin. Code § 134.403(a), (e) (2018) (Tex. Dep't of Ins., Div. of Workers' Comp., Hospital Facility Fee Guideline—Outpatient), *adopted by* 33 Tex. Reg. 400, 400–28 (2008). The Division crafted the 2008 Fee Guideline to satisfy, for outpatient-services reimbursement, the criteria in Labor Code section 413.011(d). *See* 33 Tex. Reg. at 400–28.

5

The 2008 Fee Guideline uses reimbursement amounts prescribed by the federal Centers for Medicare and Medicaid Services for certain procedure codes, instead of using any health care provider's usual and customary charges for those procedure codes. The guideline also requires that outpatient facilities be reimbursed at "200 percent" of "[t]he sum of the Medicare facility specific reimbursement amount and any applicable outlier payment amount" as provided in "the most recently adopted and effective Medicare Outpatient Prospective Payment System (OPPS) reimbursement formula and factors as published annually in the *Federal Register*." 28 Tex. Admin. Code § 134.403(f)(1)(A) (2018) (Tex. Dep't of Ins., Div. of Workers' Comp., Hospital Facility Fee Guideline—Outpatient). The 200% figure is called a Payment Adjustment Factor (PAF) or "200% of Medicare." An outpatient facility's ultimate reimbursement under the 2008 Fee Guideline is, roughly, the Medicare-prescribed amount for the services performed, plus any outlier payment,[3] times two.

The 2008 Fee Guideline included a Preamble explaining its origin and underlying reasoning. The Preamble explained the Division's purpose behind promulgating the guideline; the extensive research that informed its choices; and how the guideline meets the applicable statutory requirements, including Labor Code section 413.011's criteria. The Preamble also explained why the Division's research supported the 200% PAF. For all this, the Preamble explains, the Division relied on data from the years preceding 2008.

---

[3] In this context, an "outlier" payment is an additional payment on top of the standard Medicare-prescribed amount for a particular procedure payable when necessary to reimburse a hospital for "high cost and complex procedures where a very costly service could present a hospital with significant financial loss." *See* Medicare Program: Changes to the Hospital Outpatient Prospective Payment System, 72 Fed. Reg. 66,579, 66,683 (Nov. 27, 2007).

*Vista Changes its "Fair and Reasonable" Calculations in the Pending Disputes*

When Vista presented the fifty-three fee disputes to the Division, it calculated its reimbursement requests based on its view that Rule 134.1 should not require it to satisfy Labor Code section 413.011's criteria. Then, in response to the 2008 Fee Guideline's promulgation and to this Court's rejection of Vista's position on Rule 134.1 in *Vista Healthcare*, Vista changed its methodology for calculating "fair and reasonable" reimbursement in the fifty-three disputes. Even though Vista's underlying claims preceded the 2008 Fee Guideline change, Vista recalculated their reimbursement requests from their initial 70%–100% of billed charges to the Medicare-prescribed reimbursement amounts for those same procedure codes, added any applicable outlier amounts, and applied the 200% PAF. These new calculations, Vista represents, resulted in lower overall amounts requested for reimbursement than its original calculations did.

Vista laid out these new calculations in "Exhibit 1" documents that it filed with SOAH in each of the fifty-three disputes. In November 2013, Jacquelyn Pham, the Vice President of Business Financial Services for Dynacq Healthcare, swore to an affidavit in support of the "Exhibit 1" documents' new calculations. In it, she said that Vista's use of the 200% PAF resulted in "fair and reasonable" reimbursement. And she said that using the 2008 Fee Guideline for the fifty-three disputes produced "fair and reasonable reimbursement amount[s] which take[] into consideration all of the factors in the Texas Labor Code that are to be considered in the development of fee guidelines in the adjudication of fair and reasonable reimbursement."

*Final Hearing Before SOAH, Evidence Presented, and Result*

In April 2015 before a panel of three administrative-law judges, SOAH held its final hearing in the fifty-three disputes. Vista's evidence included its "Exhibit 1" documents; the

2008 Fee Guideline (including its Preamble); and testimony from Pham, who had provided the affidavit in support of Vista's position.

Pham testified about her qualifications, training, and experience to opine about Vista's calculation methodology. She also testified about how Vista calculated the "fair and reasonable" reimbursement amount on each "Exhibit 1," including applying the 200% PAF, and that Vista and payors have been using the same method for several years.

Vista represented that, in every dispute, its "fair and reasonable" calculations produced lower overall reimbursement amounts than its original calculations produced. But the Carriers were unwilling to reimburse Vista at the newly calculated amounts.

Pham was the only witness to testify. The Carriers' counsel cross-examined her extensively, but the Carriers did not offer any witness of their own.

Ultimately, the SOAH panel concluded that the Carriers should reimburse Vista at the rates calculated under the 2008 Fee Guideline, less amounts that the Carriers had already paid. The panel's Decision and Order specified that the panel "derive[d] a methodology for determining fair and reasonable reimbursement." The Decision and Order's fourth conclusion of law said that "Vista met its burden of proving by a preponderance of the evidence that it had not been reimbursed a fair and reasonable amount by the Carriers for the services provided."

The panel included the following findings relevant here in its Decision and Order:

4. The responsible Carrier reimbursed Vista . . . for the services provided to the injured worker in each case.

5. Vista requested additional reimbursement in each of the cases, and in each case the responsible Carrier denied the request.

. . . .

8

11. At the time Vista provided the services at issue in each case, there was no applicable fee guideline.

12. The Division adopted [the 2008 Fee Guideline], found at 28 Texas Administrative Code § 134.403, effective March 1, 2008.

13. The [2008 Fee Guideline] was adopted in order to provide fair and reasonable reimbursement for hospital outpatient services.

14. The [2008 Fee Guideline] is based on nationally-recognized studies, including data from other state systems, and research conducted by the federal Centers for Medicare and Medicaid Services (CMS).

15. Pursuant to the [2008 Fee Guideline], the Division adopted a Payment Adjustment Factor (PAF) for outpatient hospital fees of 200%, effective March 1, 2008.

16. The [2008 Fee Guideline] methodology provides a reliable method for calculating fair and reasonable reimbursement for the services at issue.

The Decision and Order also awarded Vista all interest as required by law.

### *Proceedings in the Trial Court*

The Carriers then filed this suit, seeking judicial review of the Decision and Order. *See* Tex. Lab. Code §§ 413.031(k), (k-1), .0312(a), (e) (providing for contested case hearings of medical fee disputes before SOAH and for judicial review for "[a] party who has exhausted all administrative remedies . . . and who is aggrieved by a final decision of the division or [SOAH]"). The Carriers sought reversal under Texas's Administrative Procedure Act (APA). *See generally* Tex. Gov't Code §§ 2001.001–.903. Ultimately, the trial court affirmed the Decision and Order and rendered judgment against the Carriers for the amounts that SOAH had ordered to be paid. The Carriers now appeal that judgment.

9

# STANDARD OF REVIEW

The Carriers ask that we reverse the district court's judgment affirming SOAH's final reimbursement decision. The Carriers sought judicial review of that decision under the APA. *See generally id.*; *see also* Tex. Lab. Code § 413.031(k), (k-1) (providing for judicial review under APA after aggrieved party has exhausted all administrative remedies, including at contested case hearing). The Carriers' appellate issues implicate the Act's provisions for "substantial evidence" review. *See* Tex. Gov't Code § 2001.174; Tex. Lab. Code § 410.255. Under those provisions, we must "reverse or remand the case for further proceedings if," and only if,

> substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (A) in violation of a constitutional or statutory provision;
>
> (B) in excess of the agency's statutory authority;
>
> (C) made through unlawful procedure;
>
> (D) affected by other error of law;
>
> (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
>
> (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*See* Tex. Gov't Code § 2001.174(2); *Vista Med. Ctr. Hosp.*, 2018 WL 3999595, at *2.

"Essentially, this is a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record." *Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin 2017, no pet.); *accord Facility Ins. Corp. v. Patients Med. Ctr.*, 574 S.W.3d 436, 441 (Tex. App.—Austin 2018, pet. filed). "The test is not whether

the agency made the correct conclusion in our view, but whether some reasonable basis exists in the record for the agency's action." *Jenkins*, 537 S.W.3d at 149; *accord Facility Ins.*, 574 S.W.3d at 441. "We presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden is on the contestant to demonstrate otherwise." *Jenkins*, 537 S.W.3d at 149.

## DISCUSSION

### I.     Procedural Issues

We will first address the Carriers' procedural complaints about the case that Vista should or should not have been allowed to present before SOAH. The Carriers raise these complaints in their sixth and seventh appellate issues.

#### A.     *Alleged procedural problems stemming from Vista's new calculation methodology*

In their sixth issue, the Carriers put forward three alleged procedural problems with Vista's case: (1) "Vista failed to timely submit to each Carrier its corrected, new bill"; (2) "Vista failed to request reconsideration of its corrected 'bills'" by the Carriers; and (3) "Vista failed to submit a 'complete' bill." The Carriers contend that these alleged failures mean that SOAH's award cannot stand because it either violated a statutory provision, was in excess of SOAH's authority, was made through unlawful procedure, or was arbitrary and capricious. *See* Tex. Gov't Code § 2001.174(2)(A), (B), (C), (F).

##### 1.     *Timely submission of medical bills and claims for payment*

The Carriers rely on a statute, a former rule, and a current rule for their argument about timely bill submission. Under the statute, "[a] health care provider shall submit a claim for

payment to the insurance carrier not later than the 95th day after the date on which the health care services are provided to the injured employee." Tex. Lab. Code § 408.027(a). Failing this requirement "constitutes a forfeiture of the provider's right to reimbursement for that claim for payment." *Id.*[4]

Under a now-repealed rule in force during the period relevant to the underlying disputes, a health care provider could not "submit a medical bill later than the first day of the eleventh month after the date the services are provided." *See* 25 Tex. Reg. 2139, 2146 (2000) (formerly codified at 28 Tex. Admin. Code § 134.801(c) (Tex. Dep't of Ins., Div. of Workers' Comp., Submitting Medical Bills for Payment)), *repealed by* 31 Tex. Reg. 3560, 3560 (2006).

And under a rule in force since 2006, a health care provider generally may not "submit a medical bill later than the 95th day after the date the services are provided." *See* 28 Tex. Admin. Code § 133.20(b) (2018) (Tex. Dep't of Ins., Div. of Workers' Comp., Medical Bill Submission by Health Care Provider), *adopted by* 31 Tex. Reg. 3554, 3555 (2006), *amended by* 34 Tex. Reg. 430, 432 (2009).

The statute applies to "claim[s] for payment," *see* Tex. Lab. Code § 408.027(a), and the two rules apply to "medical bill[s]," *see* 28 Tex. Admin. Code § 133.20(b) (2018) (Tex. Dep't of Ins., Div. of Workers' Comp., Medical Bill Submission by Health Care Provider); 25 Tex. Reg. at 2146, *repealed by* 31 Tex. Reg. at 3560.

The Carriers argue that the "Exhibit 1" documents' reimbursement calculations under the 2008 Fee Guideline's methodology were new "claims for payment" or new "medical bills." However, the Carriers' argument misconstrues the reimbursement process. Health care

---

[4] This statute became effective September 1, 2005. Act of May 29, 2005, 79th Leg., R.S., ch. 265, §§ 3.089, 8.020, sec. 408.027(a), 2005 Tex. Gen. Laws 469, 517, 611.

providers submit claims for payment as a billed charge, and payors may re-price the charges when reimbursing. A provider need not submit a new bill when it challenges the reimbursement amount determined by a carrier, even if the alleged underpayment changes during a regulatory proceeding. *Cf.* 28 Tex. Admin. Code §§ 133.250(d) (2018) (Tex. Dep't of Ins., Div. of Workers' Comp., Reconsideration for Payment of Medical Bills) (requiring that providers' "request[s] for reconsideration" to carriers contain simply (1) same information as original bill, (2) copy of original explanation of benefits, (3) "any necessary and related documentation not submitted with the original medical bill to support the health care provider's position," and (4) explanation "that provides a rational basis to modify the previous denial or payment"), 133.250(i) (2018) (Tex. Dep't of Ins., Div. of Workers' Comp., Reconsideration for Payment of Medical Bills) (authorizing Medical Dispute Resolution for provider after carrier has denied reconsideration).

Vista's evidence about its calculation process is substantial evidence to support the conclusion that its "Exhibit 1" documents' calculations were not new "medical bills" or new "claims for payment." The way Vista calculated "fair and reasonable" reimbursement may have changed, but the underlying bills, UBs, and procedure codes did not. Vista represents that its ultimate "fair and reasonable" calculations produced less in reimbursement than its earlier calculations had produced. Vista's new calculations therefore do not constitute new claims for payment or new medical bills under the statute and two rules on which the Carriers rely. *Cf.* 28 Tex. Admin. Code § 133.250(d), (i) (2018) (Tex. Dep't of Ins., Div. of Workers' Comp., Reconsideration for Payment of Medical Bills) (allowing providers to pursue reconsideration and dispute resolution with new explanations but without changing underlying bills).

13

### 2. *Reconsideration of bills*

The Carriers also challenge the "reconsideration" step in the underlying disputes. Generally, an aggrieved provider must request reconsideration by the carrier before proceeding to dispute resolution before the Division. *See id.*.

The Carriers rely on a former rule, which was in effect during the period relevant to the underlying disputes and which provided:

> The sender of a medical bill may request medical dispute resolution in accordance with §133.305 of this title (relating to Medical Dispute Resolution) if the sender of a medical bill has requested reconsideration in accordance with this section and:
>
> (1) after reconsideration, the sender is still dissatisfied with the insurance carrier's action on the medical bill; or
>
> (2) the sender has not received the insurance carrier's response to the request for reconsideration by the 28th day after the date the request for reconsideration was sent to the insurance carrier.

25 Tex. Reg. 2128, 2131 (2000) (formerly codified at 28 Tex. Admin. Code § 133.304(m) (Tex. Workers' Comp. Comm'n, Medical Payments and Denials)), *repealed by* 31 Tex. Reg. 3543, 3544 (2006).[5]

The Carriers argue that Vista "could not possibly have submitted" its new calculations "for reconsideration, since it never submitted these corrected, new bills to each Carrier in the first instance." The Carriers received Vista's new calculations while the underlying disputes were pending before SOAH. But Vista represents—and the Carriers do not contend

---

[5] The topics addressed by former Rule 133.304(m) are now addressed within current Rule 133.240. *See* 31 Tex. Reg. at 3543–45, 3550, 3557–58 (codified at 28 Tex. Admin. Code § 133.240 (Tex. Dep't of Ins., Div. of Workers' Comp., Medical Payments and Denials)); *see also* 39 Tex. Reg. 2102, 2103 (2014) ("28 TAC §133.304, concerning Medical Payments and Denials[,] was repealed and re-codified as 28 TAC §133.240, concerning Medical Payments and Denials, in the April 28, 2006, issue of the *Texas Register* (31 TexReg 3544), effective May 2, 2006."). The Carriers rely only on the former rule.

otherwise—that, in every dispute, Vista's "fair and reasonable" calculations under the 2008 Fee Guideline produced lower overall reimbursement amounts than its original calculations produced. When Vista originally requested reconsideration, then, it did so at higher amounts than it ultimately sought before SOAH. We therefore conclude that Vista's original, timely reconsideration requests were effective to support proceeding to Medical Dispute Resolution under former Rule 133.304(m). And we conclude that Vista was not required under the rule to ask for reconsideration again at the lower amount. *See* 25 Tex. Reg. at 2131 (formerly codified at 28 Tex. Admin. Code § 133.304(m) (Tex. Workers' Comp. Comm'n, Medical Payments and Denials)); *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 654 (Tex. 2004) (describing former Rule 133.304(m) in only these terms: "A health care provider that disagrees with a carrier's determination of the reimbursement amount may initiate the dispute resolution process.")

### 3. *"Complete" bills*

The Carriers argue that Vista's "Exhibit 1" in each dispute was a medical bill and that Vista therefore did not submit complete bills because the new calculation methodology reflected in the "Exhibit 1" documents (1) was not reflected in the documents originally submitted to the Carriers, (2 "does not include the correct billing codes from Division fee guidelines in effect on the date of service," and (3) "contains charges [that] have been altered from the UBs." The Carriers' position, in effect, is that Vista's bills as originally submitted were complete but only so long as Vista stuck with the "fair and reasonable" reimbursement calculation methodology reflected in those bills.

15

We have already concluded that the "Exhibit 1" documents were not themselves new medical bills. And we have concluded that former Rule 133.304(m) did not require Vista to submit to the Carriers for reconsideration its new "fair and reasonable" reimbursement calculations when Vista's original request for reconsideration was calculated at the higher, charged-based amounts. The Carriers do not argue that those earlier submissions were not complete in themselves, so we reject this third portion of their sixth issue.

Accordingly, we overrule the Carriers' sixth issue.

## B. *Argument about barring Vista's new calculation methodology before SOAH*

In their seventh issue, the Carriers contend that Vista's claims for "fair and reasonable" reimbursement before SOAH should have been barred for failure to meet "jurisdictional and procedural prerequisites." The prerequisite that the Carriers contend was unmet is Vista's failure to have presented the same reimbursement calculations to SOAH that it had presented to the Division. When Vista filed its challenges with the Division from 2004 to 2009, Vista sought reimbursement calculated at 70%–100% of its billed charges. But during the final hearing before SOAH in 2015, Vista sought reimbursement calculated at 200% of the Medicare-prescribed charges for the outpatient services that Vista performed, plus any outlier payment, as the 2008 Fee Guideline requires.

The Carriers consider the revised calculation methodology to be beyond "the claims" that Vista made "at the agency level." Not so. Beginning with the dispute process before the Division, and continuing through the SOAH hearing, Vista has always sought reimbursement at "fair and reasonable" rates. This Court's 2010 opinion in *Vista Healthcare* clarified that

16

Rule 134.1's incorporation of Labor Code section 413.011(d)'s "fair and reasonable" criteria to apply to certain fee disputes was reasonable. *See generally* 324 S.W.3d at 269–73.

This Court issued *Vista Healthcare* in 2010—after Vista initiated with the Division the disputes underlying this appeal but before SOAH conducted its hearing in 2015. Vista argues that, because this Court supported the Division's application of Rule 134.1 to "fee disputes involving ambulatory surgical centers" in *Vista Healthcare*, "it was clear . . . that the same standards would be applied to the outpatient cases" underlying this appeal. The Carriers argue similarly: they identify the Vista facilities at issue here as ones converted from ambulatory surgical centers to outpatient facilities, and they recognize that, for the period relevant to the underlying disputes, reimbursement to ambulatory surgical centers was required to be "fair and reasonable" too. *See* 22 Tex. Reg. 6264, 6306 (1997) (formerly codified at 28 Tex. Admin. Code § 134.401(a)(4)), *repealed by* 33 Tex. Reg. 5319, 5319–21 (2008).

In support of their argument, the Carriers rely on *Johnson v. American General Insurance Co.*, 464 S.W.2d 83 (Tex. 1971), and *Treybig v. Home Indemnity Co.*, 632 S.W.2d 896 (Tex. App.—Dallas 1982, writ ref'd n.r.e.), but those cases do not advance the Carriers' position. In *Johnson*, the Supreme Court of Texas reversed an intermediate appellate court for its holding that there was a "fatal variance" between the "claim" that an injured worker presented to the Industrial Accident Board and the claim that he later brought in court as part of the same dispute. *See* 464 S.W.2d at 83, 86–87. In court, the injured worker alleged a workplace-injury claim of silicosis. *Id.* at 85–86. But earlier before the Board, the worker did not claim silicosis, due in large part to receiving his "medical diagnosis of silicosis" only after he had filed his claim with the Board. *Id.* at 85. Nevertheless, the Supreme Court said that "the Board had before it sufficient facts and information[] to place within its jurisdiction the occupational disease of

17

silicosis" and that "there [wa]s a fair and substantial identity of the claim . . . thereafter sued upon in court." *See id.* at 86–87.

In *Treybig*, there was a "fatal variance" between an injured worker's claim before the Board and his claim in court. *See* 632 S.W.2d at 898–99. Before the Board, he presented a claim for a mere "hurt hip," even though he knew that he had been diagnosed with an occupational disease instead of simply a one-time accidental injury. *See id.* at 897–99. His "hurt hip" claim reasonably supported only a claim of accidental injury before the Board, but his claims in court were for a full-blown occupational disease. *See id.*

Assuming without deciding that *Johnson* and *Treybig* apply to medical fee disputes under the workers' compensation scheme and Division rules, we conclude that those cases do not require reversal here. Vista's "claim," both before the Division and SOAH, was for reimbursement at "fair and reasonable" rates. No one argues that the Division had before it insufficient facts or information to pass upon Vista's "fair and reasonable" fee claims. In 2015, SOAH had before it sufficient facts and information, even though the fee calculations were different from what the Division had addressed. Vista changed its "fair and reasonable" calculation methodology in response to *Vista Healthcare* and to the 2008 Fee Guideline, but there was nevertheless a "fair and substantial identity of the claim" that Vista advanced before both the Division and SOAH—"fair and reasonable" fee reimbursement.

Accordingly, we hold that some reasonable basis exists in the record for SOAH's decision to allow Vista to present its new calculation methodology, in light of *Vista Healthcare*

18

and the 2008 Fee Guideline. *See Jenkins*, 537 S.W.3d at 149. We therefore overrule the Carriers' seventh issue.[6]

## II. Substantial Evidence Issues

### A. *Evidence that the Carriers' calculation methodology did not produce "fair and reasonable" reimbursement*

The Carriers' first through fifth issues challenge the sufficiency of Vista's evidence to support SOAH's Decision and Order. In their first issue, the Carriers contend that Vista failed to carry its burden to prove that the Carriers' payments to Vista did not constitute "fair and reasonable" reimbursement. Relatedly, they argue that there was "no evidence and no findings of fact" to support SOAH's fourth conclusion of law—that "Vista met its burden of proving by a preponderance of the evidence that it had not been reimbursed a fair and reasonable amount by Carriers for the services provided."

"To obtain relief from SOAH, Vista had the burden to demonstrate by a preponderance of the evidence that [the Carriers'] reimbursement was insufficient and that Vista's proposed methodology would result in fair and reasonable reimbursement." *Vista Med. Ctr. Hosp.*, 2018 WL 3999595, at *2; *accord Vista Healthcare*, 324 S.W.3d at 268. In its fourth

---

[6] Our reasoning also disposes of what the Carriers call the "Constitutional Limitations" portion of their seventh issue. In that portion, the Carriers consider Vista's change in calculation methodology to be "rais[ing] a new basis for its claim" before SOAH from the one it had raised before the Division. The Carriers argue that they themselves would have been prohibited from making a similar change. The Carriers say that "[t]here is no rational basis to allow one party to a dispute to make changes to its claims at any time, yet prohibit the other party from ever doing the same." But the "basis for [Vista's] claim" did not change from the Division to SOAH—Vista sought "fair and reasonable" fee reimbursement in both venues. The Carriers cite no authorities suggesting otherwise in a constitutionality context. Indeed, the Carriers recognize that "Vista did have the right to present evidence, old or new," before SOAH. The Carriers had the same right, but the Carriers did not put forward testimony from any witnesses of their own. We therefore reject the argument that the Carriers were treated unconstitutionally differently.

conclusion of law, SOAH concluded that Vista had carried that burden. "Thus, we must determine whether the record includes substantial evidence that Vista had met its burden." *Vista Med. Ctr. Hosp.*, 2018 WL 3999595, at *2.

"Substantial evidence" requires "more than a mere scintilla." *Id.* (quoting *Texas Health Facilities Comm'n v. Charter Med.–Dall., Inc.*, 665 S.W.2d 446, 452 (Tex. 1984)). But the evidence "actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence." *Id.* (quoting *Texas Health Facilities Comm'n*, 665 S.W.2d at 452). "The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency." *Id.* (quoting *Texas Health Facilities Comm'n*, 665 S.W.2d at 452). We "sustain[]" the agency's action "if the evidence is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action." *Id.* (quoting *Texas Health Facilities Comm'n*, 665 S.W.2d at 452).

Vista's evidence included (1) the 2008 Fee Guideline; (2) Vista's calculations of "fair and reasonable" reimbursement in accordance with *Vista Healthcare* and the guideline; and (3) comparisons between the amounts produced by those calculations with the amounts that the Carriers agreed to pay, which were lower. Vista presented evidence that the Carriers did not reimburse them at rates that the Division considers "fair and reasonable" under the 2008 Fee Guideline and its 200% PAF. Because the Carriers' payments fell short of the rates produced by the 2008 Fee Guideline, there was more than a scintilla of evidence for SOAH to conclude that the Carriers' payments to Vista did not result in "fair and reasonable" reimbursement.

The Carriers respond that there are no findings of fact in SOAH's decision to support the conclusion that the Carriers' payments did not result in "fair and reasonable"

20

reimbursement. On the contrary, the following findings of fact in SOAH's order support the conclusion that the Carriers' payments were not "fair and reasonable" because they fell short of the amounts produced by the 2008 Fee Guideline's methodology: Vista requested additional reimbursement beyond what the Carriers had paid in each dispute; the Carriers refused; there was no applicable fee guideline when Vista provided the underlying services; the 2008 Fee Guideline was then promulgated "to provide fair and reasonable reimbursement for hospital outpatient services" and was "based on nationally-recognized studies, including data from other state systems, and research conducted by the federal Centers for Medicare and Medicaid Services (CMS)"; and the guideline, including its 200% PAF, "provides a reliable method for calculating fair and reasonable reimbursement for the services at issue."

We hold that SOAH had before it substantial evidence to conclude that the Carriers' payments to Vista did not amount to "fair and reasonable" reimbursement. Accordingly, we overrule the Carriers' first issue.

## B. Evidence that Vista's calculation methodology produced "fair and reasonable" reimbursement

The Carriers argue their second, third, and fourth issues together, so we address them together. In their second and third issues, the Carriers contend that Vista failed to carry its alleged burdens to prove (1) that the 200% PAF produced "fair and reasonable" rates "for each date of service in dispute" from 2002 to 2008 and (2) "that a 200% [PAF] was the only acceptable outpatient [PAF] for dates of service" in that period. In their fourth issue, the Carriers contend that SOAH prejudiced their substantial rights by "adopt[ing] and retrospectively appl[ying]" the 2008 Fee Guideline "to set a single exclusive reimbursement rate for all date[s] of service in dispute" from 2002 to 2008. The Carriers argue that the SOAH panel, as it said in

21

the Decision and Order, should not have "derive[d] a methodology for determining fair and reasonable reimbursement."

Vista's evidence on these topics includes (1) the guideline's Preamble, which explains in detail how the Division created the guideline, including its 200% PAF, and (2) Pham's testimony.

In the Preamble, the Division explains: "In adopting PAFs . . . , the Division has conducted extensive research to understand hospital reimbursement in the current Texas workers' compensation system, including: reimbursement rates, the reimbursement rates as compared to Medicare reimbursement, and the reimbursement rates as compared to non-workers' compensation reimbursement for hospital services." 33 Tex. Reg. at 405. The Division also "considered economic indicators for hospitals that are particularly relevant," including "[h]ospital Medicare margins and hospital market basket information." *Id.* The Preamble summarized other information considered by the Division:

- The Division's health-insurance consultant estimated that, in 2005, outpatient-services facilities were compensated on average at 186% of Medicare's prescribed amount. "Reimbursement at these levels would generally maintain overall system costs at [calendar year] 2005 levels." But the 186% average figure was the result of "one workers' compensation payor [reimbursing] at a significantly lower rate than the average payor. Adjusting for this anomaly, reimbursement moves to approximately 211 percent of Medicare allowable reimbursement."

- "[S]takeholders" of the workers' compensation system recommended PAFs ranging from 100% to 266% "of Medicare for outpatient services."

- The Division's Compensation Research Institute concluded that "hospital outpatient payments per claim in Texas were lower than the 13-state median studied."

- The Division adopted the 200% PAF based on all these factors.

22

*Id.* at 405–07. Many of these considerations stemmed from the Division's health-insurance consultant's review of data from 2005 and 2006. *See id.* at 402, 405–06.

The 2008 Fee Guideline also relied on other data from the several years before promulgation. The Preamble says that "the Division has based the primary components of its analysis on [calendar year] 2005 information" from "charged and paid data" provided by workers' compensation carriers. *Id.* at 401. The Division also studied data on about "166,000 hospital outpatient billing lines" from 2005, which led to the 186% figure. *Id.* at 402. The Division concluded from 2005 and 2006 surveys conducted by the Texas Hospital Association that outpatient services had been reimbursed by workers' compensation carriers at about 46%–49% of the service providers' billed charges. *Id.* at 403.

In her testimony, Pham discussed her qualifications to opine about using the 2008 Fee Guideline and its 200% PAF and why Vista decided to use it. In her role, she is responsible for "health information management," including "coding" and "billing and collection" under her company's comprehensive system for tracking codes and charges. She has "a certification as a registered health information administrator," which "involves all aspects of the medical record departments, which includes coding, physician deficiencies, delinquencies, [and] making sure the department's up to different rules and regulations pertaining to patients' medical records."

Pham also testified that she participates in at least thirty hours of continuing education every year and is "very familiar" with the Medicare claims processing manual. The manual "defines how Medicare would pay claims based on either inpatient or outpatient" services. In past health-industry employment, she worked (1) as an "auditor consultant," comparing bill coding to underlying records; (2) as a director of health information management; and (3) as an executive director of operations, acting as "the hub between the business office,

23

case management, and Chargemaster," which is a billing system. In all, she has "use[d] Medicare methodologies, weights, values," and the like for over a dozen years. SOAH accepted her "as an expert in . . . Medicare billing and billing practices and values."

Pham was involved with Vista's application of the 2008 Fee Guideline and its 200% PAF to these disputes. Pham testified about how Vista calculated the "fair and reasonable" reimbursement amount on each "Exhibit 1":

> Q. Well, you added modifiers that weren't on the bill, correct?
>
> A. I believe based on the coding logic was [sic] that it was my belief that we could add modifiers, we just couldn't recode the CPT code.

For the modifiers, Vista used the Medicare allowable reimbursement amounts associated with the original UBs' procedure codes, as the 2008 Fee Guideline would require. Pham testified that Vista refined its calculations over a period of several months and that the calculations resulting from that effort produced "fair and reasonable" reimbursement.

As to the 200% PAF, and as in her affidavit, she opined that using the 200% PAF resulted in "fair and reasonable" reimbursement. She noted that Vista has used the 2008 Fee Guideline to calculate reimbursement for outpatient services for several years. She testified that "workers' comp. accepts that" method "as the correct way to do it" and that several carriers reimburse Vista according to the guideline's calculation methodology.

The Carriers respond that Pham's testimony is not probative evidence at all because it is conclusory. Conclusory opinion testimony is opinion testimony that has "no basis" or whose basis "provides no support" for the opinion given. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009); *see also Cotropia v. Texas Med. Bd.*, No. 03-18-00232-CV, 2018 WL 4087408, at *4 (Tex. App.—Austin Aug. 28, 2018, pet. denied) (mem. op.) (reviewing

24

expert testimony offered before administrative-law judge for whether it was conclusory); *CenterPoint Energy Entex v. Railroad Comm'n of Tex.*, 213 S.W.3d 364, 373 (Tex. App.— Austin 2006, no pet.) (requiring agencies to provide basis for rejecting uncontradicted, unimpeached testimony unless testimony is conclusory).

The Carriers argue that Pham provided no basis, or an insufficient basis, for her opinion that the 2008 Fee Guideline's 200% PAF could be applied to services provided from 2002 to 2008 though the Division's order promulgating the guideline said that it would apply from March 1, 2008, onward. But the Preamble, entered into evidence by Vista, did provide Pham with a sufficient basis for her opinion. The Preamble's explanation of the Division's and its consultants' research from the years preceding 2008 provided a sufficient basis. Her opinions therefore were not conclusory. *See City of San Antonio*, 284 S.W.3d at 818 (expert opinions with "no basis" or "no support" are conclusory). The Carriers therefore supplied substantial evidence to support SOAH's acceptance of the 2008 Fee Guideline, and its 200% PAF, as producing "fair and reasonable" rates for the services at issue. *See Vista Med. Ctr. Hosp.*, 2018 WL 3999595, at *2 (quoting *Texas Health Facilities Comm'n*, 665 S.W.2d at 452); *id.* at *3 (reasoning that "rationale and evidence underlying" newly promulgated fee guideline could produce "fair and reasonable" reimbursement even though guideline was promulgated to apply to services post-dating those at issue). This can be true even if other evidence in the record may have preponderated against that conclusion. *See id.* at *2 (quoting *Texas Health Facilities Comm'n*, 665 S.W.2d at 452). Accordingly, we overrule the Carriers' second issue.[7]

---

[7] Relatedly, the Preamble and Pham's testimony distinguish this case from *Railroad Commission of Texas v. Lone Star Gas Co.*, 618 S.W.2d 121 (Tex. App.—Austin 1981, no writ), on which the Carriers rely. There, this Court affirmed the trial court's judgment, which set aside a Railroad Commission order for lack of substantial evidence to support applying a

25

We also overrule the Carriers' third issue because it misstates Vista's burden before SOAH. Vista needed to have shown that calculating reimbursement according to the 2008 Fee Guideline and 200% PAF resulted in "fair and reasonable" rates—not that that methodology was the only acceptable one. *See* Tex. Lab. Code § 413.011(d); Rule 134.1. We have concluded that substantial evidence supported SOAH's ruling that Vista's calculations produced "fair and reasonable" reimbursement.

As for the Carriers' fourth issue, we do not read the Decision and Order as categorically as the Carriers do. They argue that the panel's decision to "derive a methodology for determining fair and reasonable reimbursement" was not merely an effort to resolve the disputes but was instead taking upon itself "a new mandate to fashion a methodology for all the cases" and "to set a single exclusive reimbursement rate." The better reading of SOAH's action, however, is that it was resolving the Carriers and Vista's dispute over how to compensate Vista at "fair and reasonable" rates under Labor Code section 413.011(d) and Rule 134.1. To do so, the panel necessarily needed to decide whether Vista's proposed methodology produced "fair and reasonable" reimbursement. Accordingly, we overrule the Carriers' fourth issue.[8]

discounted-cash-flow formula for calculating natural-gas rates to two towns. *Id.* at 122, 124–25. The only witness before the Commission testified that a discounted-cash-flow formula should not be used, but the Commission chose to use that formula anyway despite no affirmative evidence to support it. *Id.* at 124–25. By contrast here, the Preamble's discussion of the Division's review of information from before 2008 and Pham's affirmative testimony that the 2008 Fee Guideline produces "fair and reasonable" reimbursement for the 2002–2008 services is the kind of affirmative evidence that the Commission in *Lone Star Gas* lacked.

[8] We also reject the Carriers' one-sentence Due Process argument. They argue that SOAH's use of the 2008 Fee Guideline to arrive at "fair and reasonable" reimbursement in these disputes is a "change of precedent" that "violates the Carriers['] Due Process rights." They cite *Flores v. Employees Retirement System of Texas*, 74 S.W.3d 532 (Tex. App.—Austin 2002, pet. denied), in which this Court said, "when an agency adopts new policy in the course of a contested case hearing without giving the parties pre-hearing notice, the parties may be deprived of procedural due process. For a hearing to be meaningful, the parties must be able to present

## C.     *Evidence that Vista's calculations were accurate*

In their fifth issue, the Carriers contend that Vista failed to "prove by a preponderance of the evidence that each of its . . . payment calculations were true and accurate." The Carriers put forward several alleged inaccuracies in Vista's calculations under the 2008 Fee Guideline, which, according to the Carriers, undermine SOAH's final award.

The Carriers' challenges, however, amount to attacks on the credibility and weight of Vista's evidence. In a substantial evidence review, we "may not substitute [our] judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion." Tex. Gov't Code § 2001.174. The agency "is the sole judge of the weight to be accorded the testimony of each witness" and "may accept or reject in whole or in part the testimony of the various witnesses." *Lamb Cty. Elec. Coop., Inc. v. Public Util. Comm'n*, 269 S.W.3d 260, 272 (Tex. App.—Austin 2008, pet. denied) (quoting *Cities of Corpus Christi v. Public Util. Comm'n*, 188 S.W.3d 681, 695 (Tex. App.—Austin 2005, pet. denied); *Central Power & Light Co. v. Public Util. Comm'n*, 36 S.W.3d 547, 561 (Tex. App.—Austin 2000, pet. denied)).

Pham testified that Vista refined its calculations over a period of several months and that the calculations resulting from that effort produced "fair and reasonable"

---

evidence on the issues to be decided." *Id.* at 545 (internal citations omitted). We do not read SOAH's final decision as a change in policy or precedent; it is instead an effort to reach the "fair and reasonable" conclusion mandated by Labor Code section 413.011(d) and Rule 134.1. But even if it were a change in policy or precedent, the Carriers cannot argue any lack of a meaningful opportunity to be heard. The hearing before SOAH took place in April 2015. In November 2013, Pham made her affidavit, in which she testified that Vista's calculations according to the 2008 Fee Guideline produced "fair and reasonable reimbursement amount[s] which take[] into consideration all of the factors in the Texas Labor Code that are to be considered in the development of fee guidelines in the adjudication of fair and reasonable reimbursement." Despite over a year's notice of Vista's position through the affidavit, the Carriers chose not to put forward any witnesses of their own during the SOAH hearing.

27

reimbursement. Under substantial evidence review, SOAH was permitted to believe that testimony notwithstanding the Carriers' cross-examination of Pham about instances of allegedly inaccurate calculations. *See* Tex. Gov't Code § 2001.174; *Lamb Cty. Elec. Coop.*, 269 S.W.3d at 272. Accordingly, we overrule the Carriers' fifth issue.

## III.   Interest Issues

The Carriers' eighth and ninth issues concern SOAH's award of interest to Vista. SOAH's order awarded Vista all interest as required by law, and the trial court did not disturb that ruling.

In their eighth issue, the Carriers contend that requiring them to "pay interest for unpaid fees and charges" was an error that prejudiced their substantial rights because "those fees and charges were not consistent with the guidelines." The Carriers and Vista agree that any interest owed by the Carriers is by operation of Labor Code section 413.019(a), which provides: "Interest on an unpaid fee or charge that is consistent with the fee guidelines accrues at the rate provided by Section 401.023 beginning on the 60th day after the date the health care provider submits the bill to an insurance carrier until the date the bill is paid."

Our conclusions above and this Court's decision in *Vista Medical Center Hospital* dispose of this issue. In that opinion, as here, (1) Vista sought reimbursement from a workers' compensation carrier, calculated as a percentage of its billed charges; (2) the disputes went before SOAH; and (3) the Division promulgated a new fee guideline in the meantime. *See Vista Med. Ctr. Hosp.*, 2018 WL 3999595, at \*1–4. This Court reasoned that the reimbursement amounts produced by the new fee guideline provided Vista "fair and reasonable" reimbursement even though the Division promulgated the guideline to apply to services that post-dated those at

28

issue. *See id.* Because the new fee guideline was promulgated during the pendency of the dispute, Vista changed its reimbursement calculations to come into line with the new guideline. Because the reimbursement produced by the new guideline was "fair and reasonable" under both Labor Code section 413.011 and Rule 134.1, it was also "'consistent with the fee guidelines' such that Vista is entitled to prejudgment interest beginning 60 days after Vista billed [the carrier] for each claim" under Labor Code section 413.019. *Id.* at *4.

Here, as noted above, we have concluded that substantial evidence supports SOAH's conclusion that Vista's calculations under the 2008 Fee Guideline produced "fair and reasonable" reimbursement. Vista's calculations therefore were "consistent with the fee guidelines," as required by Labor Code section 413.019(a). *See id.* at *4. Accordingly, we overrule the Carriers' eighth issue.

In their ninth issue, the Carriers contend that the accrual date for calculating interest "must be the 60th day following the date of the SOAH Order or the date each Carrier received Vista's" calculations under the 2008 Fee Guideline. The Carriers argue that the accrual date for calculating interest can be no earlier than the date in each dispute when they first learned of the amounts that Vista was claiming were "fair and reasonable" under the new guideline.

We disagree. This Court concluded the interest discussion in *Vista Medical Center Hospital* by holding that Labor Code section 413.019(a) entitled Vista to interest "beginning 60 days after Vista billed [the carrier] for each claim." 2018 WL 3999595, at *4. The statute says that interest is due "on an unpaid fee or charge that is consistent with the fee guidelines." Tex. Lab. Code § 413.019(a). As reflected in SOAH's order, each of the claims that are greater than zero contain unpaid charges that are consistent with the guidelines. These unpaid charges existed as of the date the Carriers reimbursed Vista at what has now been determined to

29

be unreasonable and unfair rates.  Accordingly, interest properly accrues from the date that the Carriers made each inadequate reimbursement.  Thus, we overrule the Carriers' ninth issue.

## CONCLUSION

We affirm the trial court's judgment.

_____

Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed

Filed:   December 5, 2019